J. M. ROSENSTOCK, Appellant,

v.

J. D. WHEELER, Receiver of Texas General Underwriters, et al., Appellees.

No. 13181.

Court of Civil Appeals of Texas.

Houston.

Jan. 30, 1958.

Rehearing Denied Feb. 20, 1958.

John E. Cahoon, Houston, J. H. Burr, Houston, of counsel, for appellant.

F. L. Kuykendall, Austin, for appellee J. D. Wheeler, receiver.

BELL, Chief Justice.

On January 28, 1947, Will G. Knox was appointed receiver of Texas General Under-

writers. Texas General Underwriters was a reciprocal insurance exchange formed pursuant to and operating under the authority conferred by Articles 5024–5033, Revised Civil Statutes of Texas.[1] Appellant, J. M. Rosenstock, was attorney-in-fact for subscribers at the Exchange. On January 23, 1947, appellant wrote the Board of Insurance Commissioners that the Exchange was insolvent and requested that appropriate steps be taken to wind up its affairs. It was pursuant to this request that a receiver was appointed. J. D. Wheeler is successor to Will G. Knox.

This appeal involves an action brought by the receiver against J. M. Rosenstock and two other individuals. Judgment was only against appellant and no complaint is made by appellee concerning the judgment in favor of the other defendants. Judgment was against appellant for $37,137.39. Appellee in his petition alleged that when the receiver was appointed all policies of insurance then in force were automatically cancelled and the premiums which had been paid to the Exchange became unearned pro rata from such date. It alleged that there was $148,696.88 in unearned premiums. Further, it was alleged that appellant had received as commissions 25% of this amount and he was liable to the receiver of the Exchange for such unearned commissions.

Appellant contends that in a reciprocal exchange there is no such thing as unearned premiums because in case of insolvency the subscriber, by virtue of statute and his contract, is liable to the exchange, for the benefit of creditors, for one additional annual premium. He also asserts in defense that the 25% of the subscriber's premiums which he received as attorney-in-fact was not a commission for writing insurance but was compensation paid to him for services rendered by him as attorney-in-fact for subscribers at the Exchange.

Appellant's power of attorney, of course, gave him authority to exchange contracts of indemnity with subscribers at the Exchange. It provided that the subscribers would pay their proportionate part of the cost of investigating and settling claims, including all costs of litigation. A limit on the liability of a subscriber was fixed at the premium deposit (advance deposit) and one additional annual premium or premium deposit. The paragraph fixing compensation to the attorney-in-fact reads as follows:

"In consideration for his services, our Attorney-in-Fact shall deduct for himself not to exceed twenty-five per cent (25%) of all amounts charged to our account as a result of this agreement. In consideration of this twenty-five per cent (25%) allowed our Attorney-in-Fact, he agrees to pay all costs of operating the exchange including any commissions allowed agents or brokers, all other acquisition costs and all other costs except the cost of reinsurance, losses or expense paid to claimants, expense of investigating and settling claims, medical expense incurred in connection with claims, legal expense and attorney fees incurred in connection with claims, and taxes and licenses due to the United States Government or any political subdivision thereof."

The paragraph of each policy dealing with refund of premiums on cancellation of the policy reads as follows:

"This policy may be cancelled by the named assured by the surrender thereof or by mailing to the company written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the company by mailing to the named assured at the address shown in this policy written notice stating when, not less than five days thereafter, such cancellation shall

1. Now. V.A.T.S. Insurance Code, arts. 19.01–19.12.

be effective. The mailing of the notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named assured or the company shall be equivalent to mailing. If the named assured cancels, the earned premiums shall be computed in accordance with the customary short rate table and procedure; if the company cancels, the earned premiums shall be computed pro rata. Premium adjustment will be made at the time cancellation is effective and, if not, the matter shall be made as soon as practical after cancellation becomes effective and the company's check or check of its representative mailed or delivered as aforesaid shall be sufficient tender of any refund of the premium due to the named assured."

Testimony offered at the trial established the amount of unearned premiums as alleged in the plaintiff's petition and taking 25% of such amount there would be $37,137.39 which the attorney-in-fact had received from such premiums. There is really no argument about these amounts, but the differences between the parties are whether these are in law unearned premiums and whether the 25% represents commissions for writing insurance or is absolute compensation payable to the attorney-in-fact for his services. Testimony introduced also established an interpretation by the parties concerning whether these were commissions on writing insurance or compensation to the attorney-in-fact for services to be rendered by him. While the Exchange operated, if a policy was cancelled the unearned premium was refunded by the Exchange to the subscriber and the Exchange in turn charged back against the attorney-in-fact 25% of this unearned premium which had been refunded. Such a practice was also established by evidence as a custom in the insurance business.

We have concluded that the trial court correctly allowed recovery against appellant.

■ In a reciprocal exchange the subscriber is both the assured and the insurer, with the limitation on his liability to the extent of his advance deposit and one additional annual premium. This is so by virtue of the power of attorney, the policy issued, and the statute, all of which must be construed together. If an exchange fails, the subscriber can be made to place intact his advance deposit and he can be made to pay one additional premium. Pacific Finance Corp. v. Knox, Tex.Civ.App., 247 S.W.2d 154, ref., n. r. e.; Glenn H. McCarthy v. Southern Underwriters, Tex.Civ.App., 192 S.W.2d 469, ref., n. r. e. Since this is true, says appellant, there can be no unearned premium. We cannot agree. A premium is the consideration paid by a person for insurance protection or coverage. When the policy of insuarnce is cancelled, he is without coverage and he is entitled to a refund of the consideration he has paid for the coverage for the period of time the coverage was not in force. When the receiver was appointed, the policies of the subscribers were cancelled by operation of law and the receiver by letter so notified the policyholders. Thereafter, they were without insurance coverage though they had paid a premium for a year's coverage. They were, therefore, entitled to a refund of the unearned portion of the consideration paid. It is true they might not actually be entitled to receive the money from the Exchange because they, as subscribers, were liable to one additional annual premium for the benefit of other creditors, but this does not mean there is no unearned premium. If money were available to pay those who have a claim for loss under a policy and also other creditors and some money left over, the subscriber would be entitled to receive back this unearned premium. The fact that at law he must pay at least an additional annual premium does not change the fact that after January 28, 1947, the subscriber

had no coverage. This payment he may be required to make is not consideration for insurance coverage, it is merely an obligation fixed by the statute, the power of attorney, and the contract measured by the amount of an annual premium in order to furnish funds to pay creditors of the Exchange.

Appellant relies heavily on the case of Pacific Finance Company v. Knox, supra. We do not think that case supports his position. The court there merely held that since the statute, the power of attorney, and contract provided the subscriber must keep his advance deposit intact to furnish a fund from which to pay losses, the amount in the fund could not be considered as a liability in determining solvency. It did not hold there was no obligation on the part of the Exchange to pay it to subscribers, but held such obligation subordinate to the obligation to make it available to pay claims for loss under policies of insurance. To the same effect is the case of Glenn H. McCarthy, Inc., v. Southern Underwriters, supra.

We, therefore, hold that the sum of $148,696.88 represented unearned premiums.

Of this amount the Exchange retained 75% and 25% was paid the attorney-in-fact. Under the policy quoted above, when a policy was cancelled the Exchange became obligated to refund the whole of the unearned premium (subject to the rights of creditors). It has, however, only 75% of such premium, and 25% is held by the attorney-in-fact. The attorney-in-fact says this 25% was compensation to him and he is not obligated to refund it. Appellant says the power of attorney gives him 25% of all amounts charged to a subscriber's account. The policy provides for refunds of unearned premiums. The evidence shows that while the Exchange operated it, on cancellation of a policy, refunded the whole of the unearned premium and 25% of it was then charged back against appellant. This practice was concurred in by appellant. This constitutes an interpretation of the contract by the appellant himself. He is bound by such construction. Texas Law of Evidence, McCormick and Ray, Second Edition, Section 1687, and authorities there cited.

 The evidence also showed that the custom in the insurance business was for the insurer to refund the whole of an unearned premium and to then recover the agent's commission from such agent. Contracts may be construed in the light of customs of the business to which such contracts relate. E. H. Perry & Co. v. Langbehn, 113 Tex. 72, 252 S.W. 472; Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716; Latta v. Transit Grain Co., Tex.Civ.App., 222 S.W.2d 467.

Finding no error, the judgment of the trial court is affirmed.