**WHATABURGER, INC., Dally Advertising, Inc., and Dal-Worth Whatco, Inc., Appellants,**

**v.**

**Mike RUTHERFORD, Appellee.**

**No. 21023.**

Court of Appeals of Texas, Dallas.

Sept. 24, 1982.

S. Gary Werley, Bishop, Lamens & Brown, Fort Worth, for appellants.

**32**

John D. Griggs, Dallas, for appellee.

Before GUITTARD, C.J., and FISH and ALLEN, JJ.

GUITTARD, Chief Justice.

Mike Rutherford was dissatisfied with the "replicar" vehicle he won as a prize in a promotional contest sponsored by Dally Advertising, Inc., Whataburger, Inc., and Dal-Worth Whatco to promote Whataburger restaurants. He rejected the tendered prize and sued Dally, Whataburger and Dal-Worth Whatco for fraud and for breach of contract, alleging various defects. The jury found breach of contract, but did not reach the fraud issues under the court's instructions. The trial court rendered judgment on the verdict against all defendants for $8,000 as the cost of remedying the defects and for attorney's fees. We reverse on the ground that there is no evidence to support the finding of $8,000 as the cost of remedying the defects. We remand for a new trial of the whole case, notwithstanding defendants' attempt to limit their appeal, because we hold that the fraud issues cannot be separated from the contract issues without unfairness to the parties. In view of another trial, we hold that the evidence establishes a breach of the contract and that Whataburger, Inc. was a party to the contract. However, we hold that Dally Advertising, Inc. has no contractual liability because it was acting in the scope of its agency.

### Breach of Contract

No question is raised on this appeal concerning the existence of the alleged contract. The questions before us concern breach of the contract and proof of damages.

The prize offered by defendants in their promotional material was a "Replica Bentley—an almost exact duplicate of the road-racing champion of the 1930's." Plaintiff entered the contest and was publicly declared the winner. Admittedly, the vehicle tendered had various defects. Defendants attempted to remedy them, but failed to satisfy plaintiff.

In response to special issues, the jury found that the vehicle tendered was not of the type and condition which an ordinary prudent person would reasonably have anticipated from hearing and reading the advertisements of defendants (first issue), and that the defects were not remedied within a reasonable time (fourth issue). Defendants complain that the first issue was improper under the law of contracts because it should have inquired whether the vehicle as delivered met the terms of the contract rather than whether it met the anticipations of a reasonable and prudent person.

We agree that the controlling consideration in a contract case is the intention of the contracting parties rather than the understanding of a hypothetical reasonable and prudent person. Nevertheless, we do not reverse the case on this ground. The evidence is undisputed that the "replicar" tendered was not the vehicle defendants intended to deliver. In response to plaintiff's request for admissions, defendants admitted that at the end of the promotion the vehicle was not in shape for delivery. Jackie Vinson, who managed the promotion for defendants, testified that because of the numerous defects, the value of the vehicle to defendants as a prize for the winner of the contest was zero. Moreover, in a suit against the supplier of the vehicle, defendants alleged that the vehicle was "unacceptable and unfit for use as an automobile and as a prize." In that suit the present defendants affirmatively claimed damages for the defects rather than indemnity for any damages recovered by plaintiff. Consequently, these allegations were properly received as admissions in the present record. *City of College Station v. Seaback,* 594 S.W.2d 772, 777 (Tex.Civ.App.-Waco 1979, no writ); *Scurlock Oil Co. v. Joffrion,* 390 S.W.2d 526, 531 (Tex.Civ.App.-Tyler 1965, no writ).

Although most of the major mechanical defects were eventually remedied, other defects remained, and no attack is made here on the jury's finding that the defects were not remedied within a reasonable time. Consequently, we conclude that

the evidence in the present record establishes defendants' breach of contract as a matter of law and that any error in submission of the first issue is immaterial. For similar reasons, we hold that defendants' points urging that there is no evidence and insufficient evidence to support the jury's answer to the first issue are not well taken. On another trial different evidence might require a different holding on these questions.

### Costs of Remedying Defects

The jury found in response to special issue number five that $8,000 would fairly and reasonably compensate plaintiff for the cost of remedying the defects that defendants failed to remedy within a reasonable time. Defendants contend that there is no evidence to support this finding.

■ Plaintiff responds that defendants have waived the "no evidence" point by failing to object to the submission of the issue as required by rules 272 and 274 of the Texas Rules of Civil Procedure. The record shows that defendants filed and the court overruled a motion to disregard the jury's answer to this issue. This motion was sufficient to support a "no evidence" point of error on appeal. *See Commercial Ins. Co. of Newark, N.J. v. Puente,* 535 S.W.2d 948, 950 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

■ Plaintiff also contends that the evidence was sufficient to support the jury's answer to the issue. He argues that the jury's finding is supported by the combined testimony of two witnesses, one who testified that the defendants had invested $7,000 in the vehicle, including the purchase price and the amount they paid for repairs, and an expert who testified that it would cost at least $15,000 to build a "replicar" as advertised and promised by defendants. Plaintiff contends that the jury could have subtracted the $7,000 that defendants had in-

vested in the vehicle from the $15,000 required to build a proper "replicar" and thus found that $8,000 would reasonably compensate plaintiff for the cost of remedying the defects.

We cannot agree. There was no evidence tending to establish any amount as the cost of remedying the particular defects established by the evidence.[1] The expert witness gave no opinion on this question. He had not examined the vehicle in question, nor was his opinion elicited in response to a hypothetical question detailing the defects shown by the evidence. The cost of remedying those defects might have been more or less than the difference between what defendants had invested in the vehicle and the cost of building a "replicar" of the type promised.

■ Although the cost of building a "replicar" of the type promised might be relevant to the value of the vehicle promised, that value was not the issue answered by the jury. Neither were defendant's expenses in procuring the defective vehicle and attempting to repair it relevant to the reasonable cost of remedying the defects remaining. Even proof of the amount paid for actual repairs to the vehicle would not be sufficient in the absence of proof that the amount was reasonable. *Truck Farm, Inc. v. Allen,* 608 S.W.2d 296, 297–98 (Tex. Civ.App.—Dallas 1980, no writ). Consequently, this evidence is incompetent to prove the damages found by the jury. *Harrison v. Dallas Court Reporting College,* 589 S.W.2d 813, 816–17 (Tex.Civ.App.—Dallas 1979, no writ).

### Liability of Dally and Whataburger

■ Defendants Dally Advertising, Inc., and Whataburger, Inc., complain that there is no evidence to support their liability for breach of contract because they were not

---

1. We do not consider whether the cost of remedying defects is a correct measure of damages, since no objection to this measure is urged on appeal. In the case of a sale of personal property, the cost of remedying defects has been held not to be a proper measure. *Mobile Housing, Inc. v. Moss,* 483 S.W.2d 56, 58 (Tex.Civ.

App.—Tyler 1972, no writ). *Cf. Smith v. Kinslow,* 598 S.W.2d 910 (Tex.Civ.App.—Dallas 1980, no writ) (breach of warranty of repairs). In tort cases, however, the reasonable cost of repairs may be proper as an alternative measure. *Pasadena State Bank v. Isaac,* 149 Tex. 47, 228 S.W.2d 127, 128–29 (1950).

parties to the advertising promotion carried on by Dally as agent for Dal-Worth Whatco, Inc. Plaintiff challenges their standing to raise these points because all defendants joined in filing a notice of limitation of appeal as authorized by rule 353 of the Texas Rules of Civil Procedure. Plaintiff argues that this notice limits the appeal to an attack on the special issues concerning damages and attorney's fees and thus excludes any question concerning the liability of Dally and Whataburger on the contract alleged.

We do not so construe the notice of limitation of appeal. Rule 353 requires such a notice to designate a "severable portion of the judgment from which the appeal is taken." The notice purports to limit the appeal to that portion of the judgment providing that plaintiff recover $8,000 from all defendants and that portion of the judgment providing that plaintiff's counsel recover from all defendants attorney's fees of $19,600, plus additional attorney's fees in the event of appeal. The only dispositive provisions of the judgment other than those complained of on this appeal are provisions awarding interest and requiring defendants to deliver the vehicle to plaintiff. We need not consider whether the latter portions are "severable." Nothing in the notice precludes defendants Dally or Whataburger from complaining of any matter that would affect the recovery against them of the damages awarded by the judgment.

Rule 353 does not provide a method of limiting the points of error, as distinguished from limiting the portion of the judgment appealed from. Limitation of the points is provided by rule 377(d), which authorizes an appellant who desires to appeal on a partial record to file a "statement of the points to be relied on." Here defendants filed no such statement of their points. Consequently, the separate points presented by Dally and Whataburger are properly before us.

■ With respect to Dally, we hold that no basis for contractual liability has been established. Plaintiff argues that the evidence shows that Jackie Vinson, who handled the promotion for Dally, was acting in the course of his employment as agent for all the defendants. Although this proposition may be true, it does not establish the liability of Dally on the contract because it is undisputed that Dally's only connection with the promotion was as agent for Dal-Worth Whatco and possibly also for Whataburger. Ordinarily, an agent is not liable on the contracts he makes for a disclosed principal within the scope of his agency. *Wright Waterproofing Co. v. Applied Polymers of America,* 602 S.W.2d 67, 69 (Tex. Civ.App.—Dallas), *writ ref'd n.r.e. per curiam,* 608 S.W.2d 164 (Tex.1980); *Helland v. Western Construction Co.,* 516 S.W.2d 437, 440 (Tex.Civ.App.—San Antonio 1974, no writ). No basis for an exception to that rule is shown here.

■ With respect to Whataburger, the question is whether Dally was acting as its agent as well as the agent of Dal-Worth Whatco. Whataburger points out that no facts were alleged or proved that would justify the trial court in disregarding the separate corporate existence of Dal-Worth Whatco, which was a corporation engaged in promoting the local interests of Whataburger's franchises. The question, however, is not one of separate existence. The problem is whether Dally was acting as agent for Whataburger as well as Dal-Worth Whatco. Whataburger responded to interrogatories propounded by plaintiff by stating that Robert C. Pegues, Whataburger's "Vice-President, Advertising and Promotion," approved the concept of this particular promotion scheme for Whataburger, and that, although Dally had primary responsibility for the contest, Pegues was "in charge." The evidence also shows that the "Whataburger" name was used with Whataburger's approval in the promotion—including the advertisement to which plaintiff responded. In view of this undisputed evidence, we hold that Whataburger was at least a co-principal with Dal-Worth Whatco and, consequently, a party to any contract that may have resulted from the promotion.

### Judgment

 Finally, we must determine the judgment to be rendered on this appeal. Because of our holding that there is no evidence to support the jury's finding that $8,000 was the amount necessary to reasonably compensate plaintiff for the defects which defendants failed to remedy, the judgment must be reversed. We do not render judgment that plaintiff take nothing, however, because the evidence does establish the existence of various defects for which damages may properly be awarded. Consequently, the case must be remanded for a new trial.

■ Further questions are raised concerning the scope of the issues on another trial. Defendants contend that the issues should be limited to those relating to their liability for breach of contract and should not extend to plaintiff's claim for fraud and exemplary damages. We cannot agree. In this respect we are governed by that portion of rule 434 of the Texas Rules of Civil Procedure which provides:

> [I]f it appears to the court that the error affects a part only of the matter in controversy and that such part is clearly separable without unfairness to the parties, the judgment shall only be reversed and a new trial ordered as to that part affected by such error, provided that a separate trial of unliquidated damages alone shall not be ordered if liability issues are contested.

The question is whether the contract issues are "clearly separable without unfairness to the parties." We conclude that they are not. At the trial now under review, the fraud issues were conditioned on the jury's affirmative answer to the second issue, which inquired whether the defects in the vehicle were "substantial." The jury answered this issue in the negative, thus precluding any answer to the fraud issues. At another trial the same issue may be submitted again because the portion of rule 434 above quoted prevents our remand for trial on the damage issue alone if liability issues are contested, and the issue may be answered so as to require answers to the fraud

issues. Consequently, we hold that the fraud issues are so intertwined with the contract issues that they cannot fairly be separated at another trial.

In so holding, we do not pass on whether the conditioning of the fraud issues was proper, whether the evidence raises fraud, whether either the contract damage issues or the fraud issues as submitted are in the proper form, since those questions have not been raised on this appeal.

■ Defendant also contends that their notice of limitation of appeal precludes retrial of the fraud issues. We do not agree. The question on remand is not whether the appeal has been limited, but whether the fraud issues are "separable without unfairness to the parties" within the meaning of rule 434. For reasons already stated, we hold that they are not separable. Consequently, we remand the case generally for a new trial.

Reversed and remanded.