**MEDIACOMP, INC., Appellant,**

v.

**CAPITAL CITIES COMMUNICATION, INC., Appellee.**

No. 01–85–0125–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 19, 1985.

Rehearing Denied Oct. 10, 1985.

---

Mark D. Wilson, Wesley & Wilson, Houston, for appellant.

Stephen E. Price, Freedman & Hull, Houston, for appellee.

Before DUNN, JACK SMITH and COHEN, JJ.

### OPINION

DUNN, Justice.

After a non-jury trial in a suit on a sworn account, the court awarded appellee $7140 plus attorney fees and interest.

Appellant, Mediacomp, Inc., (Mediacomp) is in the business of both computer analyses services and media buying services, i.e., consulting with potential advertisers and placing orders for advertisements with radio and television stations. Appellee, Capital Cities Communications, Inc., (KTRK) is the owner of T.V. station KTRK–TV.

In 1978, Mediacomp requested KTRK to establish an account so that Mediacomp could place advertisements with the station for its clients. The account was opened by KTRK in the name of Mediacomp and "all placement by Mediacomp" was guaranteed for the first year by S.L. Brown & Associates, Inc. Evidence reveals that KTRK did business with Mediacomp for several years after the initial guarantee expired; KTRK had always received payment from Mediacomp and saw it as the party responsible on the account; KTRK was never notified that it should look to the client for payment, rather than to Mediacomp; invoices were always sent to Mediacomp; and KTRK had no contact with Mediacomp's clients.

In December 1981, Mediacomp purchased advertising from KTRK for its client, Schlotzsky's. As usual, Mediacomp confirmed the oral order in writing. KTRK acknowledged the order with their standard "Acknowledgment of Agreement between T.V. station KTRK–TV and Mediacomp, Inc." The acknowledgment agreement stated, "this contract is subject to the terms listed for the station in the current Standard Rate Data unless this contract or rider thereto carries superceding conditions." Further evidence was offered pertaining to the American Association of Advertising Agencies' standards, and their application to agencies in the advertising field. This was offered to support KTRK's claim that it was customary in the industry to hold the agency, and not the principal, liable on an account of this type.

The conditions in KTRK's acknowledgment agreement stated, in effect, that the agency would be liable on the account for payment. Mediacomp did not respond to this acknowledgment agreement, nor did it acknowledge KTRK's position as to their liability. KTRK aired the requested advertising in January of 1982. After the first month's run, Mediacomp received payment from Schlotzsky and paid KTRK with their own check, deducting 15% from the amount paid by Schlotzsky. There was conflicting testimony with regard to the understanding as to the 15% deduction. KTRK claims that they allowed this 15% discount because dealing with a proven agency benefits them, as they do not have to spend time checking the principal's credit. Mediacomp maintains that the 15% was a normal discount for the agency, or the princi-

pal, where dealing direct, and that it had nothing to do with the liability of the agency.

KTRK continued to air the advertising for the months of February and March 1982, and monthly invoices were sent by KTRK to Mediacomp. Schlotzsky did not pay Mediacomp for the months of February and March, and Mediacomp did not pay KTRK. Mediacomp denies liability for the February and March payments.

The relevant findings of fact and conclusions of law are set forth below:

### FINDINGS OF FACT

(5) That all purchases by MEDIACOMP INC. of television time from CAPITAL CITIES COMMUNICATIONS were charged to MEDIACOMP, INC., in accordance with the agreement.

(7) MEDIACOMP, INC. acted as an advertising agency with regard to the contracts for television time with CAPITAL CITIES COMMUNICATIONS, INC.

(8) That after the initial twelve month period expired, MEDIACOMP, INC. contracted with CAPITAL CITIES COMMUNICATIONS, INC. for advertising in the total amount of $16,600.

(9) That the contract between MEDIACOMP, INC. and CAPITAL CITIES COMMUNICATIONS, INC. for advertising incorporated the standard terms and conditions in Standard Rate and Data under which CAPITAL CITIES COMMUNICATIONS, INC. looked solely to the agency for payment for the television time contracted for.

### CONCLUSIONS OF LAW

(3) MEDIACOMP, INC. is indebted to CAPITAL CITIES COMMUNICATIONS, INC. for the television advertising made a basis of Plaintiff's lawsuit.

(4) That CAPITAL CITIES COMMUNICATIONS, INC. is entitled to recover of MEDIACOMP, INC. in the principal amount of $7,140.

(5) That CAPITAL CITIES COMMUNICATIONS, INC. is entitled to recover of

MEDIACOMP, INC. interest on the principal amount at the rate of six percent (6%) per annum from the 28th day of May, 1982 until date of entry of Judgment.

(6) That CAPITAL CITIES COMMUNICATIONS, INC. is awarded $2,380 attorneys' fees from MEDIACOMP, INC.

(7) That all costs in regard to this lawsuit are assessed against MEDIACOMP, INC.

(8) That CAPITAL CITIES COMMUNICATIONS, INC. is awarded post-judgment interest on the judgment at the rate of 10.79% per annum.

In its first four points of error, Mediacomp asserts that there is no evidence or insufficient evidence to support the findings of fact set out above. The validity of the agreement was never put in issue. The basic issue is whether the agent or the disclosed principal is liable on the contract.

In considering a "no evidence" point of error, this court will consider only the evidence tending to support the trial court's finding, viewing it in the most favorable light to support the finding, giving effect to all reasonable inferences that may properly be drawn therefrom, and disregarding all contrary or conflicting evidence. *Butler v. Hanson*, 455 S.W.2d 942 (Tex.1970); *Briargrove Shopping Center Joint Venture v. Vilar*, 647 S.W.2d 329 (Tex.App.—Houston [1st Dist.] 1982, no writ). If there is more than a scintilla of probative evidence in support of the finding, the point will be overruled.

In reviewing factual insufficiency points, this court will consider all evidence in the record that is relevant to the fact being challenged. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Moreover, findings of fact made by the trier of fact will be sustained if there is some evidence of probative force to support them and if they are not against the great weight and preponderance of the evidence. *State v. Zaruba*, 418 S.W.2d 499 (Tex.1967).

When an agent contracts for a disclosed principal, the agent generally is not liable on the contracts he makes. *Whataburger, Inc. v. Rutherford,* 642 S.W.2d 30, 34 (Tex.App.—Dallas 1982, no writ); *Nagle v. Duncan,* 570 S.W.2d 116 (Tex.Civ. App.—Houston [1st Dist.] 1978, writ dism'd). However, an agent of a known principal may be personally liable if the agent substitutes his own responsibility for that of his principal, or has pledged his own responsibility in addition to that of his principal. *Id.* This liability can be by express agreement, or in the absence of an express agreement, by circumstances showing that he has either expressly or impliedly assumed such liability. *Ford Motor Co. v. Boatman,* 345 S.W.2d 782 (Tex.Civ.App.— Beaumont 1961, no writ). Conflicting evidence is to be resolved by the trier of fact, and appellate courts are not to substitute their judgment for that of the trial court. *Norris of Houston, Inc. v. Gafas,* 562 S.W.2d 894 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). The foregoing principles of law are not disputed.

A review of the testimony and other evidence establishes Mediacomp's implied assumption of liability. This implied assumption of liability can be drawn from: the letter from Mediacomp's president that guaranteed the payment of the account by S.L. Brown and Associates; the continuation of the same pattern of dealing over a period in excess of two years after the guarantee expired; no express denial by Mediacomp of their future liability after the expiration of the guarantee; Mediacomp's receipt of KTRK's "Acknowledgment of Agreement," which specifically brought attention to KTRK's conditions of sale; and Mediacomp's continued acceptance of services from KTRK. Indeed, Mediacomp impliedly acknowledged its liability on the account by allowing the S.L. Brown Co. to guarantee its debt to KTRK. Unless Mediacomp intended to be liable to the appellee, there was nothing for the S.L. Brown Co. to guarantee.

Considering all the evidence, we find that there was sufficient evidence of probative value to support the court's findings of fact nos. 5, 7, 8, and 9, and such evidence is not against the great weight and preponderance of the evidence.

Appellant's points of error nos. 1, 2, 3, and 4 are overruled.

In its fifth point of error, appellant contends that the trial court erred in rendering judgment for appellee as there is no evidence or insufficient evidence to support the judgment. In light of the preceding discussion, we overrule point of error 5.

In its sixth point of error, appellant contends that the trial court erred in making conclusions of law nos. 3, 4, 5, 6, 7, and 8 because there is no evidence or insufficient evidence to support them.

An appellate court will review the correctness of the legal conclusions drawn from the facts found. However, the trial court is not required to set out in minute detail its every reason and theory for having reached the legal conclusion expressed. *Jamison Cold Storage Door Co. v. Brown,* 218 S.W.2d 883, 887 (Tex.Civ.App.—Fort Worth 1949, writ ref'd n.r.e.).

In view of the preceding discussions, there was sufficient evidence to support conclusion of law no. 3, that appellant is indebted to appellee for the advertising made the basis of this suit. Further, there was testimony supporting the amount of the judgment and the amount of the attorney's fees as found by the court in conclusions of law nos. 4 and 6. Additionally, Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon Supp.1985) provides for 6% prejudgment interest. *See Fidelity & Casualty Co. v. Central Bank,* 672 S.W.2d 641 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Therefore, the court did not err in making conclusion of law no. 5, that 6% prejudgment interest be assessed against appellant.

In conclusion of law no. 8, the court awarded postjudgment interest at the rate of 10.79%. The rate of interest established in The Texas Register for December 26, 1984, was 10%. *See* 9 Tex.Reg. (Nov.

30, 1984). Accordingly, the portion of the trial court's judgment setting post-judgment interest at 10.79% is reformed to 10%. Appellant's sixth ground of error is in all other respects overruled.

In its seventh point of error, appellant contends that the trial court erred in overruling its objection to appellee's exhibit number 2 on the grounds that it is immaterial. Exhibit 2 is the written guarantee of Mediacomp's account with KTRK for its first 12 months of business.

The test of materiality is whether there is any rational relationship, or pertinence, of the proffered evidence to any probable or controlling fact issue. Tex.R.Evid. 401(a). To be relevant, evidence must have probative value tending to establish the presence or absence, truth or falsity, of a fact. Tex.R.Evid. 401(b). If evidence is not material or relevant, it should be excluded. Tex.R.Evid. 401(c).

■■■ The document complained of is a letter guaranteeing Mediacomp's account with KTRK for their first 12 months of business. The written guarantee for one year, given to KTRK in support of Mediacomp's credit, supports an inference that the appellant intended to be liable on the account in question. We find that the guarantee had a tendency to make more or less probable the material issue of whether appellant intended to be liable. Appellant's seventh point of error is overruled.

In appellant's eighth point of error, it contends that the trial court erred in overruling its objections to the introduction of a copy of the American Association of Advertising Agencies standard contract on the basis that it is immaterial. The contract was offered as evidence of the application of industry standards to agencies in the advertising field.

■■■ Evidence of the routine practice of an organization is relevant to prove that the conduct of a person or organization on a particular occasion was in conformity with the routine practice. Tex.R.Evid. 406. Moreover, contracts may be construed in the light of the customs of the business to which such contracts relate. *Galaxy Boat Manufacturing Co. v. East End State Bank*, 641 S.W.2d 584 (Tex.App.—Houston [14th Dist.] 1982, no writ); *Rosenstock v. Wheeler*, 310 S.W.2d 350 (Tex.Civ.App.—Houston 1958, writ ref'd). The copy of the American Association of Advertising Agencies standard contract was relevant as evidence of custom and industry practices and was circumstantial evidence regarding the intent of the parties. The trial court did not err in overruling appellant's objection. Appellant's eighth point of error is overruled.

The judgment of the trial court is reformed as indicated and is affirmed in all other respects.

JACK SMITH, J., dissents.

JACK SMITH, Justice dissenting.

I respectfully dissent. The sole issue in this case is whether the appellant expressly or impliedly by its actions agreed to be responsible for the payment of the Scholtzsky account.

The evidence shows that appellant was not an advertising agency but was in the business of advising clients how to properly purchase "slot time" in the television and radio media to obtain the best results for the client's business or product. The appellee was aware of the nature of appellant's business because it had received a guarantee four years prior to the accrual of the present charges from an advertising agency which assured payment by the advertising agency. This guarantee was for a period of one year, to those in the television and radio media, who by agreement with appellant, extended credit to the appellant for the purchase of "slot time" advice.

In the instant case, the appellant arranged "slot time" for its disclosed principal, Scholtzsky's, with the appellee. The appellant never agreed to be responsible for the payment of the Schlotsky account and the fact that the appellee unilaterally decided to hold the appellant responsible fails to reach the essential elements of

consummating a contract; that is offer, acceptance, and consideration. The contract relied upon in the majority opinion is an advertising agency contract. The appellant is not an advertising agency. It would be most unusual for one advertising agency to guarantee the credit of another advertising agency. This seems to be the conclusion in the majority opinion.

I would hold that there is insufficient evidence to support the trial court's findings that the appellant and appellee reached an agreement either expressly or impliedly. I would further hold that the circumstantial evidence is insufficient to support the trial court's findings that the appellant would be responsible for the Schlotzsky's account. I would further hold that the general rule is applicable, that is when an agent contracts for a disclosed principal, the agent is not liable for the contract he makes on behalf of his principal. *Nagle v. Duncan*, 570 S.W.2d 116 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ dism'd). I would reverse the trial court judgment and render judgment for the appellant.