**Reversed in part and rendered and Opinion filed November 9, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00769-CV

---

### CRYSTAL SHERRARD, Appellant

### V.

### SIGNAD, LTD., Appellee

---

**On Appeal from the Co Civil Ct at Law No 3**
**Harris County, Texas**
**Trial Court Cause No. 1118093**

---

## OPINION

In this restricted appeal, defendant-appellant Crystal Stewart challenges the trial court's judgment entered in favor of appellee SignAd, LTD following a one-party bench trial. To satisfy the error-on-the-face-of-the record element, she lodges what amounts to a legal sufficiency challenge, claiming nothing in the record establishes her liability to SignAd for its digital outdoor advertising contract with Sometimes Spouse, LLC. Because we conclude the claims asserted against Stewart (and upon which the trial court's judgment is based) are not legally

supported by the face of the record, we reverse and render judgment in her favor.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2015 Sometimes Spouse executed an advertising contract with appellee SignAd.  Under the contract, SignAd would post advertisements for Sometimes Spouse to appear on a shared-space digital billboard in Waco and Sometimes Spouse would make regular monthly payments to SignAd for the service.  As is ordinary, customary, and necessary for such entities, both companies relied upon actual human representatives, corporate officers, to perform the mundane yet essential act of physically signing the contract.  For Sometimes Spouse, its CFO Crystal Stewart signed the contract, for SignAd, "AE" Mike Morrill.

By SignAd's account, payments were made by Sometimes Spouse, at best, sometimes, and the account remained significantly unpaid after the performance term was complete.

On September 26, 2018, SignAd, Ltd. sued Sometimes Spouse LLC in the County Court at Law Number Three of Harris County asserting three claims: breach of contract, suit on a sworn account, and quantum meruit. The petition also named Crystal Stewart as a defendant asserting the same claims against her. SignAd's petition is verified through the affidavit of its collection manager, Angie Heckel, which attaches a copy of a single-page advertising contract with Sometimes Spouse and a document showing the history of activity on Sometimes Spouse's account with SignAd.

On November 11, 2018, the court set April 3, 2019 as the trial date.  Later that November, Stewart and Sometimes Spouse LLC both appeared in the case, each filing their respective answers to the lawsuit.   Stewart's answer generally denies the allegations and is not verified.

2

On April 3, 2019, SignAd, Ltd appeared at trial. Stewart and Sometimes Spouse LLC did not. SignAd presented one witness in support of its claims, and one witness for attorneys' fees. At the conclusion of trial, the trial court signed a judgment in SignAd's favor and against both Stewart and Sometimes Spouse LLC.

Six months later, Stewart filed her notice of restricted appeal, her only filing in the record other than her Answer.

## II. RESTRICTED APPEAL

A restricted appeal is for a party who did not participate at the hearing that resulted in judgment and who did not file a post-judgment motion. *Lanier v. Stubblefield*, 01-19-00816-CV, 2021 WL 1375793, at *1 (Tex. App.—Houston [1st Dist.] Apr. 13, 2021, no pet.); Tex. R. App. P. 30. Restricted appeals under Rule 30 replaced the former writ of error practice. *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 849 (Tex. 2004)("The writ of error procedure is now the restricted appeal procedure in Texas Rules of Appellate Procedure 25.1, 26.1(c) and 30"). To prevail, Stewart must establish that: (1) she filed her notice of restricted appeal within six months after the judgment was signed; (2) she was a party to the underlying lawsuit; (3) she did not participate in the hearing that resulted in the complained-of judgment and did not timely file any post-judgment motions or requests for findings of fact and conclusions of law; and (4) error is apparent on the face of the record. *Ins. Co. of State of Pa. v. Lejeune*, 297 S.W.3d 254, 255 (Tex. 2009); *Telezone, Inc. v. Kingwood Wireless*, 14-15-00742-CV, 2016 WL 7436813, at *1 (Tex. App.—Houston [14th Dist.] Dec. 22, 2016, no pet.). The first three requirements are jurisdictional and will preclude a party's right to seek relief by restricted appeal. *See Ex parte E.H.*, 602 S.W.3d 486, 496 (Tex. 2020); *Lanier*, 2021 WL 1375793, at *1. The fourth requirement, error apparent on the face of the record, is not jurisdictional, but instead goes to the

3

merits. *See E.H.*, 602 S.W.3d at 496.  We address the three jurisdictional elements first.

## A. JURISDICTIONAL ELEMENTS

Appellee does not contest the three jurisdictional elements and the record before us shows that they are satisfied.  First, Stewart was required to file her notice of appeal within six months of the date of the trial court's April 3, 2019 judgment.  Stewart filed her notice of appeal on October 3, 2019, which cuts close, but under our calculation rules is timely because the day the judgment was signed is not included in calculating the six-month deadline. Texas Rule of Appellate Procedure 4.1; *see Clopton v. Pak*, 66 S.W.3d 513, 515–16 (Tex. App.—Fort Worth 2001, pet. denied) (concluding that appellant's August 22 notice of restricted appeal filed after the trial court's February 22 dismissal order was signed was timely filed).

Second, although SignAd named "Crystal Sherrard" instead of "Crystal Stewart" as the individual defendant in its lawsuit, Stewart voluntarily appeared as a party when she answered the lawsuit and correctly identified herself as "Crystal Stewart [formerly known as] Crystal Sherrard".   Therefore, she satisfies the "party of record" requirement.

We also conclude the third, "non-participant" requirement, is satisfied because no post-judgment motion is in our record, and our record shows that neither Stewart nor her co-defendant, Sometimes Spouse, LLC, attended or were represented by counsel at the April 3, 2019 bench trial.  Upon these undisputed facts, we conclude that Stewart has satisfied the three jurisdictional components of her restricted appeal.

## B. ERROR ON THE FACE OF THE RECORD

We next reach the merits issue of the case, and consider whether there is error on the face of the record.

## 1. Standard of Review

When reviewing a restricted appeal, the "face of the record" consists of all the papers on file, including the clerk's record and reporter's record, at the time that the judgment was signed. *Alexander*, 134 S.W.3d at 848–49; *In re K.M.*, 401 S.W.3d 864, 866 (Tex. App.–Houston [14th Dist.] 2013, no pet.). Review by restricted appeal affords an appellant the same scope of review as an ordinary appeal. *Ex parte E.H.*, 602 S.W.3d 486, 495 (Tex. 2020), reh'g denied (June 19, 2020); *Norman Communications v. Texas Eastman Co*., 955 S.W.2d 269, 270 (Tex. 1997)("Review by writ of error affords an appellant the same scope of review as an ordinary appeal, that is, a review of the entire case"). Like an ordinary appeal, but unlike a collateral challenge, extrinsic evidence may not be considered. *General Elec. Co. v. Falcon Ridge Apartments*, 811 S.W.2d 942, 944 (Tex. 1991)("The rule has long been that evidence not before the trial court prior to final judgment may not be considered in a writ of error proceeding"). Appellate review in a restricted appeal permits the courts of appeals to review legal and factual insufficiency claims. *Norman Communications*, 955 S.W.2d at 270.

## 2. The face of the record

The most significant portions of the record in this case consists of the verified petition, the testimony at the April 3, 2019 hearing, and the court's final judgment.

### a. *Verified Petition*

In its verified petition, SignAd included the affidavit of Angie Henckel. The affidavit refers to "Defendant" (in the singular) as "Sometimes Spouse LLC and

5

Crystal Sherrard".  The affidavit refers to a written contract and sworn account executed between SignAd and "Defendant" and attaches as "Exhibit A-1", what Heckel describes as "the relevant Outdoor Advertising Contracts." The entirety of Exhibit A-1 consists of a single-page document titled "Contract for Digital Outdoor Advertising".

Exhibit A-1 appears to be "Page 1 of 3" of a form contract ("Rev 06/20/14") generated by SignAd, with "SignAd Outdoor" appearing in the top left corner as a header.  Then further below, "Contract by Advertiser or by Agency on Behalf of Advertiser".  The contract identifies the client as "Sometimes Spouse LLC" and contains an address directly below.

The essential terms of the contract appear filled out as entries to boxes directly below.  They reflect an agreement that SignAd would provide an advertising spot on a digital board ("Board #: 12405.1") at a location in Waco near Interstate 35, at a monthly net rate of "$450.00", and a total contract amount of "$5,400" for a term starting "1/1/2016" and ending "12/31/2016".  Below these terms specific to the parties, the contract included form language in smaller text:

> Agency/Advertiser hereby contracts for the outdoor advertising services described upon the terms set forth above and on PAGE 2 of 2 listed as Standard Terms.  Contracts transmitted via electronic methods are to be treated as original contracts and are subject to the terms and conditions of this document.  This contract is cancelable by SignAd with 15-days written notice if contract does not include a full spot, being shown 7-days per week.  Contract signer agrees to pay to the order of SIGNAD, LTD in Houston, Harris County, Texas. Signer(s) accept full financial responsibility. Any advertising agency that executes this outdoor advertising contract understands and agrees that they are a principal to the contract and responsible for any and all payments.  Payment terms are NET 10.

The contract includes three separate boxes for the parties through their representatives to sign the contract: one for the "CLIENT", one for the "AGENCY",

6

and one for "SignAd, LTD" as indicated in the top left corner of the three respective boxes.

| CLIENT: PRINTED NAME: | SOMETIMES SPOUSE LLC Crystal Stewart | TITLE: | CFO |
| SIGNATURE: | | DATE: | 12-22-15 |
| AGENCY: PRINTED NAME: | | TITLE: | |
| SIGNATURE | | DATE: | |
| SignAd, LTD. | | AE: | Mike Morrill |
| SIGNATURE: | | DATE: | 12-28-15 |

With reference to Exhibit A-1, Heckel's affidavit states "[t]he Outdoor Advertising Contract provides that unpaid amounts due are subject to an eighteen percent (18%) annual percentage rate." However, Exhibit A-1 includes no such term, express or implied.

The affidavit also attaches as "Exhibit A-2" a document which Heckel represents to be "all activity on the sworn accounts." The entirety of Exhibit A-1 consists of a single-page document titled "Sometimes Spouse" with activity that would appear to pertain to a single account. For a period beginning in April 2016 and ending May 2018, the document itemizes monthly billing amounts ("Amt Billed"), payment amounts ("Payments"), financial charges ("FinChgs"), outstanding balance of financial charges ("F/C O/S"), as well as running monthly totals. The document reflects a total billed amount of $5,100, a total payment amount of $1,150, and total financial charge amount of $1,473.

### b. Reporter's Record of April 3, 2019 Hearing

At the start of the hearing SignAd's counsel announced "ready", represented to the court that the case on file was a breach of contract case "as well as a suit on account", that he had provided notice to the defendants of the hearing. Neither

Sometimes Spouse nor Stewart are named as appearing at the hearing. SignAd proceeded to call Angie Heckel, the company's account manager. Heckel testified as follows:

> *Q.* I am showing you a contract which we have marked as Exhibit 1.[1] Is this the contract at issue in this case?
>
> *A.* Yes.
>
> *Q.* Who is the client on the contract and who has signed the contract?
>
> *A.* Sometimes Spouse signed by Crystal Stewart.
>
> *Q.* All right. And did the signer agree to pay the sign ad?
>
> *A.* Yes.
>
> *Q.* Did the signer agree to accept full responsibility in this case?
>
> *A.* Yes.
>
> *Q.* Okay. And was advertising provided under this contract?
>
> *A.* Yes.
>
> *Q.* What is the amount due under this contract? I am showing you what we've marked Exhibit 2. Do you have a dollar amount due on this contract?
>
> *A.* Yes.
>
> *Q.* And what is the dollar amount due on this contract?
>
> *A.* $5,423.

After Heckel, SignAd's attorney, Rich Melendez, gave sworn testimony regarding his attorney's fees. The trial court promptly announced that it would enter judgment in favor of SignAd.

### c. Final Judgment

The trial court's final judgment recites that SignAd's attorneys appeared ready for trial, that Sometimes Spouse and Stewart did not appear at the hearing.

---

[1] Although Exhibits 1 and 2 were referred to at the hearing, no exhibits were offered or admitted at the hearing. These exhibits, however, are part of the "record" since they were attached to plaintiff's original petition.

The judgment recites that the court considered "the pleadings and papers on file in this case, as well as the evidence presented in this matter". The judgment is rendered "in favor Plaintiff, SIGNAD LTD, against Defendants, Sometimes Spouse LLC and Crystal Sherrard", jointly and severally liable for "$5,423.00", prejudgment and post-judgment interest, and attorneys' fees "$1,807.67". The judgment states that it "disposes of all claims and all parties".

**2. Is the court's judgment supported by legally sufficient proof on the face of the record?**

Stewart contends that the record conclusively demonstrates that she did not incur personal liability as a matter of law, that she signed the SignAd contract in her representative capacity as CFO for Sometimes Spouse, and that there is no evidence that she was bound in any other way under the contract. SignAd contends that because Stewart did not file a verified answer challenging its sworn-account allegations, it's verified petition established prima facie proof of its right to recover from Stewart on its contract claim. SignAd further relies on the testimony at the hearing as proof supporting its claim, contending that it established that Stewart was contractually bound to the contract. We consider the parties' respective contentions in the course of analyzing whether the court's judgment contains legally sufficient support on the face of the record.

In determining whether SignAd presented evidence of a valid contract giving rise to Stewart's liability, we look to the relevant contract. *See Mission Grove, L.P. v. Hall*, 503 S.W.3d 546, 552–53 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The construction of an unambiguous contract presents a question of law subject to de novo review. *Tawes v. Barnes,* 340 S.W.3d 419, 425 (Tex.2011); *ConocoPhillips Co. v. Noble Energy, Inc.*, 462 S.W.3d 255, 265–66 (Tex. App.—Houston [14th Dist.] 2015), aff'd, 532 S.W.3d 771 (Tex. 2017).

9

Our primary concern is to ascertain and give effect to the written expression of the parties' intent. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). We afford terms their plain and ordinary meaning unless the contract indicates that the parties intended a different meaning. *Dynegy Midstream Servs., Ltd. P'ship. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). We consider the entire contract, respecting all provisions so that none are rendered meaningless. *Plains Expl. & Prod.*, 473 S.W.3d at 305. We also bear in mind the particular business activity to be served, and when possible and proper to do so, we avoid a construction that is unreasonable, inequitable, and oppressive. *Nat'l City Bank v. Ortiz*, 401 S.W.3d 867, 878 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (op. on reh'g) (citing *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam)). If a contract is unambiguous, we enforce it as written without considering parol evidence for the purpose of creating an ambiguity or giving the contract "a meaning different from that which its language imports." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam).

An agent who contracts for a disclosed principal is generally not liable on the contract. *Mission Grove, L.P. v. Hall*, 503 S.W.3d 546, 552–53 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Mediacomp, Inc. v. Capital Cities Commc'n Inc.,* 698 S.W.2d 207, 211 (Tex. App.—Houston [1st Dist.] 1985, no writ); Restatement (Second) of Agency § 320 ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."). However, an agent may be liable if she substitutes herself for the principal, or if she consents to liability in addition to the principal. *Hull v. S. Coast Catamarans, L.P.*, 365 S.W.3d 35, 45

10

(Tex. App.—Houston [1st Dist.] 2011, pet. denied). This consent may be express or can arise from the circumstances. *Id.*

The face of the purported contract plainly shows an agreement between SignAd and Sometimes Spouse involving advertising services to be provided by SignAd for "Sometimes Spouse", who in turn is bound to pay SignAd in accordance with the terms of the contract. Handwritten signatures on the contract reflect that each company executed the agreement through their respective corporate officers, which for Sometimes Spouse was CFO Crystal Stewart. Stewart is not otherwise identified as a party to the contract.

As proof that the parties intended that Stewart would also be personally liable under the contract, SignAd's relies upon two contiguous sentences that appear in the fine print in the center of the page: "Contract signer agrees to pay to the order of SignAd, Ltd in Houston, Harris County, Texas. Signer(s) accept full financial responsibility." Though neither "contract signer" nor "signer" is defined in the contract, and though Stewart was not named in the contract as the "signer", SignAd argues that this language binds the individual representative who signs the contract. SignAd's proposed interpretation, that this language establishes personal liability to individual representative of the client, is not supported in consideration of other provisions, and is contrary to judicial interpretation of similar provisions. *See Mission Grove, L.P. v. Hall*, 503 S.W.3d 546, 552–53 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (finding similar language — "[t]he obligations under this agreement are also the personal obligations of the builder representative signing below"— ineffective to bind the company's president who signed the agreement, noting the absence of the representative's name in the contract's text); *see also, Prent v. rJET, L.L.C.*, No. 01–14–00408–CV, 2015 WL 1020207, at *2–4 (Tex. App.—Houston [1st Dist.] Mar. 5, 2015, no pet.) (mem. op.)(finding

11

company's president who signed contract not personally liable under contract despite its language naming her as a "Lessee" and its statement certifying "I am responsible for the operational contract of the aircraft" because construed as a whole the contract was is not ambiguous and the president executed it in her representative capacity.).

The "signer" language does not reflect an intent to make Stewart (or any officer who happened to sign the contract) on behalf of his or her company personally liable. Read in context with the other parts of the form-contract, which throughout contemplates the two possible types of signatories — type one, *clients* or *advertisers*; and type two, *agencies of advertisers* — the form reflects SignAd's intent to have a single instrument signable by either type of entity, such that SignAd could rely on payments to be made by the particular party that signed the contract, whether that party ultimately be the client/advertiser or an agency used by the advertiser. The alternate types of "signers" are referred to throughout the single-page document. This is reflected in the title, "Contract by Advertiser *or* by Agency on Behalf of Advertiser" and the alternate signature boxes available for Client/Advertisers and Agencies on Behalf of Advertisers.

Also, to make this liability clear to advertising agencies, the sentence immediately following the two sentences containing the word "signer" states: "Any advertising agency that executes this outdoor advertising contract understands and agrees that they are a principal to the contract and responsible for any and all payments." No similar conspicuous statement suggests that an individual representative like Stewart, signing on behalf of her company that seeks advertising services, should similarly *understand and agree that she is a principal to the contract and responsible for any and all payments*.

The only fair reading of the contract is that the term "signer" refers to the

advertiser or agency executing, or *signing*, the contract. In this case, Sometimes Spouse signed the contract, and accordingly is the only party that can reasonably be construed as the "signer" referred to in the contract. *JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453, 460 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)(Corporations can act only through individuals); see *Mission Grove, L.P. v. Hall*, 503 S.W.3d at 552–53; *see also, Prent v. rJET, L.L.C.*, No. 01–14–00408–CV, 2015 WL 1020207, at *2–4.

The *Mediacomp, Inc. v. Capital Cities Commc'n, Inc.*[2] case cited by SignAd deals with the respective obligations of a client-advertiser and advertising agency owed to a broadcast company. In that case, part of Mediacomp's business was providing "media buying services, i.e., consulting with potential advertisers and placing orders for advertisements with radio and television stations." *Id*. at 209. Mediacomp purchased advertising from KTRK for its client, Schlotzsky's. *Id*. On appeal, after review of significant evidence extrinsic to the contract the court of appeals affirmed the trial court judgment finding the ad agency, Medicacomp, liable for payments Schlotzsky's did not make to KTRK. *Id*. at 211. *Mediacomp* might be a relevant case had Stewart represented that she was an independent advertising agent and signed under the "AGENCY" signature box, but it does not support SignAd's position with regard to Stewart's position as Sometimes Spouse's corporate officer.

Through its sworn account claim SignAd aims to bypass Stewart's argument that the face of the record reveals error under basic agency law. SignAd argues that because Stewart did not file a verified denial she forfeited her right to deny the "capacity" in which she was sued. In her reply, Stewart argues that SignAds abandoned its sworn account claims at trial.

---

[2] 698 S.W.2d 207, 209 (Tex. App.—Houston [1st Dist.] 1985, no writ).

A suit on a sworn account is not an independent cause of action. *S. Mgmt. Services, Inc. v. SM Energy Co.*, 398 S.W.3d 350, 353–54 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Rule 185, entitled "Suit on Account", outlines a procedure available "[w]hen any action ... is founded upon a[ ] ... claim ... for personal service rendered, ... and is supported by the affidavit of the party, ... the same shall be taken as prima facie evidence thereof, unless the party resisting such claim shall file a written denial, under oath. A party resisting such a sworn claim ... [who] does not timely file a written denial, under oath, ... shall not be permitted to deny the claim ..." Tex. R. Civ. P. 185. When the procedure is followed, the affidavit is taken as prima facie evidence of the claim unless the opposing party filed a verified denial. *Id.* A party who does not file a sworn denial may not dispute either the receipt of the items or services or the correctness of the stated charges. *See id.*

Some exceptions prevent application of the Rule's procedural requirements, and like the procedure, the exceptions are not new. *See e.g.*, *McCamant v. Batsell*, 59 Tex. 363, 371 (1883) (applying the same procedure previously prescribed by statute and holding that a surety was not required to file a sworn affidavit disputing facts related to debtor's payments to his creditors). When it appears from the plaintiff's account itself that the defendant was a stranger to the account, the defendant need not file a sworn denial to contest liability. *Tedder v. Gardner Aldrich, LLP*, 421 S.W.3d 651, 654 (Tex. 2013). The rationale for this exception is rooted in the expectation that the defendant has personal knowledge of the basis of the claim:

> The law does not permit, much less encourage, guesswork in swearing; and to require a defendant to swear that a transaction between a plaintiff and a third person, of which he may have no personal knowledge whatever, either did or did not occur in whole or in part, before he will be permitted to controvert the *ex parte* affidavit

14

of his adversary, would be to encourage swearing without knowledge, which is morally perjury, or in some cases to forego a just defense, which might be clearly established under the well settled rules of evidence.

*McCamant*, 59 Tex. at 371.

The rationale for applying the exception carries forward to this case because even though Stewart signed the contract on behalf of Sometimes Spouse, the trial court could not presume that she, as an individual, retained any personal knowledge of the status of Sometime Spouse's account beyond the date that she signed the contract. The only evidence showing that any amount is due is the Exhibit reflecting the account activity on Sometime Spouse's account, and we cannot presume that she has knowledge facts occurring during the performance-period of the contract. Because SignAd's sworn account claim against Stewart is based entirely on its account with Sometimes Spouse, to which we cannot presume for purposes of Rule 185 that Stewart retained any personal knowledge of activity on the sworn account, she was not required to file a sworn denial. *Id.*; *see also Schuett v. Hufstetler*, 608 S.W.2d 787, 788 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ)(president of company that invoices were made about the construction of his personal residence was not required to file a sworn denial of contractor's claims technically related to corporate account).

Because the proof supplied by SignAd plainly shows that the nature of Stewart's involvement in the advertising contract was that of a representative of Sometime's Spouse and acting on its behalf, we reject SignAd's alternate construction of the contract. The record provides no proof that Stewart was bound by the contract, or that in the absence of a contract, that any advertising services provided by SignAd were for Stewart, or accepted, used or enjoyed by Stewart. *See Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732–33 (Tex. 2018).

Accordingly, none of the claims asserted by SignAd against Stewart and upon which the court's judgment based are supported by sufficient evidence.

We therefore sustain Stewart's complaint on appeal.

## III. CONCLUSION

It is apparent from the face of the record that the trial court erred in granting judgment against Stewart. None of the claims asserted against Stewart were supported by law or fact. Having sustained Stewart's issue on appeal, we reverse the trial court's judgment in part, as it applies to Stewart, and render judgment dismissing Stewart.


/s/     Randy Wilson
Justice

Panel consists of Justices Jewell, Poissant, and Wilson.