**FOOD SOURCE, INC., Appellant,**

v.

**ZURICH INS. CO., Appellee.**

No. 05–87–00219–CV.

Court of Appeals of Texas, Dallas.

May 9, 1988.

Rehearing Denied June 21, 1988.

L. W. Anderson, Dallas, for appellant.

Vial, Hamilton, Koch & Knox, Robert D. Allen, Barbara E. Pusch, Sharla Hays, Jeffery S. Lynch, Dallas, for appellee.

Before STEPHENS, McCLUNG and HECHT, JJ.

McCLUNG, Justice.

Food Source, Inc. appeals a judgment in favor of Zurich Insurance Co., appellee, in Food Source's suit to collect under a "Boiler and Machinery" policy issued by Zurich. Food Source contends, in thirteen points of error, that (1) the policy terms entitled Food Source to judgment as a matter of law, (2) the jury finding of no coverage was not supported by factually sufficient evidence, (3) the trial court erred in accepting Zurich's supplemental answer, (4) the trial court erred in commenting on the credibility of Food Source's witness on attorneys' fees, and (5) the trial court erred in admitting evidence that a food bank received Food Source's contaminated product. We find no merit in Food Source's contentions; hence, we affirm.

Food Source produces ravioli at a plant in McKinney, Texas. When the events giving rise to this lawsuit occurred, Food Source had a contract with Weight Watchers to produce ravioli, conforming to Weight Watchers specifications, which Weight Watchers used in its frozen dinners. On February 1, 1985, the president of Food Source learned that Weight Watchers had discovered metal shavings in Food Source's shipment of Ravioli. Food Source immediately ceased production.

After looking for metal contamination in its ingredients and finding none, Food Source hired an engineer to examine its machinery. The engineer located a broken gear in the gearbox of a cryogenic freezing tunnel that Food Source uses to individually quick-freeze its ravioli. The gear box propels a chain conveyor that moves the ravioli through the tunnel during the freezing process. The broken gear caused the chain conveyor to contact guides on the side of the conveyor so that small slivers of stainless steel were severed and fell into the ravioli.

On February 14, 1985, repairs to the machinery were completed and Food Source resumed production. Food Source placed the ravioli that was produced prior to the repairs into cold storage, and filed a claim under its "Boiler and Machinery" policy for damages resulting from the broken gear. Zurich denied coverage and Food Source filed this lawsuit. Zurich answered with a general denial.

The insurance policy, which Food Source introduced into evidence, insures Food Source against losses caused by any "accident" involving an "object" as these terms are defined in the policy. The policy defines object as:

Any boiler, any fired or unfired vessel normally subject to vacuum or internal pressure other than static pressure of

contents, *any refrigerating system,* any piping with its accessory equipment, any mechanical or electrical machine or apparatus which generates, controls, transmits, transforms or utilizes mechanical or electrical power. [emphasis added].

The definition of object also provides:

Object shall not mean or include any elevator, crane, ladle or bucket, hoist, power shovel, drag line, excavator, scale or conveyor but not excluding any pressure vessel or electrical equipment used with a machine.

The policy defines "Accident" as "any sudden and accidental breakdown of the Object, or a part thereof, which manifests itself at the time of its occurrence by physical damage to the Object necessitating repair or replacement of the Object." The policy further provides that "Accident Shall not mean: ... (b) wear and tear." The jury found that no coverage existed for the loss in question under the terms of this policy and that Food Source suffered no damages.

In its first three points of error, Food Source asserts that coverage existed as a matter of law because (1) the insurance policy, which was unambiguous, did not exclude a gear box from coverage and the breakage of the gear was sudden and accidental as a matter of law, and (2) even if the policy is ambiguous exclusionary ambiguities must be resolved in favor of the insured.

If a word used in an exclusionary or limiting clause of an insurance policy is ambiguous, the courts will apply the construction which favors the insured. *Standard Fire Ins. Co. v. Griggs,* 567 S.W.2d 60, 63 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.). "Ambiguous" denotes that the word used is susceptible of more than one meaning. *Id.* Where the word has a well-defined and understood meaning, it is not ambiguous. *Id.*

The parties do not argue over the meaning of the term conveyor in this case; rather, any uncertainty about coverage in this case arises from the conflicting evidence offered by the parties about the function of the broken gear within the

freezing tunnel and application of that evidence to the ordinary and generally accepted meaning of the term conveyor. *Compare Standard Fire Insurance Co.,* 567 S.W.2d at 63. Accordingly, we hold that the term conveyor is unambiguous, and the trial court properly allowed the jury to decide the fact questions concerning coverage of the broken gear in this case, based on the ordinary and generally accepted meaning of the term conveyor.

The question whether the breaking of the gear was an "Accident" as defined in the policy is likewise a question of fact for the jury to decide. *See New York Underwriters Ins. Co. v. Coffman,* 540 S.W.2d 445, 455–56 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.). Accordingly, we hold that the court could not have found coverage as a matter of law, and we overrule appellant's first three points of error.

In his second three points of error appellant contends that the jury's finding in response to Special Issue No. 1, that no coverage existed for the loss in question, (1) is not supported by the evidence, (2) is not supported by sufficient evidence and (3) is against the great weight and preponderance of the evidence.

In reviewing factual sufficiency points, we consider all evidence in the record that is relevant to the fact being challenged. *Mediacomp, Inc. v. Capital Cities Communication, Inc.,* 698 S.W.2d 207, 210 (Tex.App.—Houston [1st Dist.] 1985, no writ). Moreover, findings of fact made by the trier of fact will be sustained if there is some evidence of probative force to support them, and if they are not against the great weight and preponderance of the evidence. *Mediacomp, Inc.,* 698 S.W.2d at 210.

Zurich presented extensive evidence at trial that the gear that broke was a part of a conveyor system; that a conveyor system is one designed to move objects from one part of production activity to another part of production activity; that a conveyor system is made up of both an endless belt and a drive mechanism; and that a mechanism is a conveyor whether it conveys items

through a production device such as a freezer or oven, or outside such devices.

Food Source presented evidence, to the contrary, that a gear contained within a freezing tunnel is part of the freezing system; that the freezing system includes the conveyor; and that the gear in question remains a part of a freezing system although its function may be to drive a conveyor.

■ Having reviewed the extensive amount of conflicting evidence provided to the jury, we hold that there was sufficient evidence from which the jury could have found that the broken gear was not an object covered by the policy and, hence, no coverage. We also hold that a no coverage finding was not against the great weight and preponderance of the evidence. Accordingly, we overrule appellants fourth, fifth and sixth points of error.

Food Source next complains, that the trial court should not have granted Zurich leave to file its "Supplemental Answer" during trial; hence, the trial court erred in admitting Zurich's evidence regarding its affirmative defenses which were pled for the first time in that "Supplemental Answer." A short rendition of facts is necessary to disposition of this issue.

Zurich answered Food Source's suit with a general denial. On the first day of trial Zurich submitted a "Supplemental Answer" to the court which set out the policy exclusions to coverage as required by Texas Rule of Civil Procedure 94, which provides, in pertinent part:

Where the suit is on an insurance contract which insures against certain general hazards, but contains other provisions limiting such general liability, the party suing on such contract shall never be required to allege that the loss was not due to a risk or cause coming within any of the exceptions specified in the contract, nor shall the insurer be allowed to raise such issue unless it shall specifically allege that the loss was due to a risk or cause coming within a particular exception to the general liability.... TEX.R.CIV.P. 94 (Vernon 1988).

The court allowed the late filing of Zurich's "Supplemental Answer," and trial proceeded. The following day the court reversed its ruling on the "Supplemental Answer." Prior to this second ruling, Food Source introduced the entire insurance policy into evidence. On the fourth day of trial, Zurich attempted to introduce evidence concerning its affirmative defense of exclusion from the policy, and Food Source objected. Zurich argued that Food Source opened the door to the evidence by admitting the entire insurance policy into evidence, and that the court should allow Zurich to introduce its evidence and file its "Supplemental Answer." At this point, the court again reversed its ruling and allowed Zurich to file its "Supplemental Answer." The court also admitted Zurich's evidence.

■ We note at the outset that although labeled "Supplemental Answer," Zurich's final answer attempted to raise affirmative defenses to Food Source's suit under the insurance policy and, thus, was an amendment to Zurich's original answer, subject to the rule governing amendments. TEX.R.CIV.P. 63; *Holland v. First Nat'l Bank in Dallas*, 597 S.W.2d 406, 411 (Tex. Civ.App.—Dallas 1980, writ dismissed). Amended pleadings may be filed within seven days of trial and thereafter with leave of court. TEX.R.CIV.P. 63; *Rocha v. Ahmad*, 676 S.W.2d 149, 154 (Tex.App.—San Antonio 1984, writ dism'd). Amended pleadings may be filed up to the time judgment is signed. *Id.* at 154. Under rule 63, the trial court shall allow the filing unless there is a showing that the amendment would operate as a surprise to the opposing party. *Id.*

■ Nothing contained in the record indicates that Food Source was either surprised or prejudiced by the filing of the amendment. To the contrary, Food Source was prepared to present an abundance of evidence in an attempt to defeat Zurich's affirmative defenses. Moreover, on the first day of trial, the judge offered to grant Food Source a continuance, but Food Source refused the offer, stating that it would prefer to proceed to trial. Under these circumstances, we hold that the

judge did not abuse his discretion in allowing the amendment.

Food Source complains, in point of error number nine, of the trial judge's comments to Food Source's witness on attorney's fees. The judge made the comments in the following context:

Q. And I take it you did not write a letter as most attorneys do, to your client saying this will confirm that you have retained me, and we will charge you on regular charge scale.

A. I know, and I bet that you didn't write one to Zurich Insurance Company in this Case either.

MR. JENKINS: Move to strike.

THE COURT: You just answer the questions, Mr. Anderson.

Q. You didn't write a letter to Food Source saying ...

MR. ANDERSON: Judge, pardon me. He said as necessary for attorneys to do in his question to me.

THE COURT: Well, let me tell you what. You are a witness right now. Don't argue with me. You accept my ruling and do what I tell you.

Ask another question.

....

Q. Your name does not appear on any of what we lawyers call written discovery. Interrogatory Answers, Request for Production or Request for Admission as an attorney of record?

MR. JENKINS: I'll object to that. It's assuming facts not in evidence, and is directly contrary to the facts.

THE COURT: Overruled.

He may answer, if he knows the answer.

A. My name appears on all of the depositions that were taken except the one that I was not present at.

MR. LYNCH: I will move to strike that as not being responsive to the question of whether or not his name is on the discovery pleadings of Request for Production, et cetera.

A. I already told you that I didn't sign every pleading.

THE COURT: He is making an objection to the Court. For someone that has been around the courtroom as much as you claim to be, you ought to know enough to be quiet when he is talking.

A judge is necessarily allowed discretion in expressing himself while controlling trial of a case, and reversal of the judgment for a judge's comments should not be ordered unless there is a showing of impropriety coupled with probable prejudice and rendition of an improper verdict. *Texas Employers Ins. Assoc. v. Draper*, 658 S.W.2d 202, 209 (Tex.Civ.App.—Houston 1983, no writ). Furthermore, although a trial judge should avoid verbal controversies with counsel in the presence of the jury and should not express or display personal attitudes of displeasure toward counsel, the general conduct of trial is the judge's responsibility and he may properly intervene to promote its expedition and prevent unnecessary waste of time. *French v. Brodsky*, 521 S.W.2d 670, 679 (Tex.Civ. App.—Houston 1975, writ ref'd n.r.e.).

The record reflects that the comments of the judge, although expressing agitation and impatience with the attorney, were calculated to confine the attorney within his role as a witness while he was on the stand. We hold that there is no evidence in the record of prejudice or probable rendition of an improper verdict as a result of the judge's comments; hence, we overrule appellant's ninth point of error.

Food Source complains in its final four points of error that the trial court erred in admitting evidence that a portion of the contaminated ravioli was ultimately distributed to a charitable food bank. Food Source contends that because it produced evidence that the food was sent to the food bank supplier by mistake, that the evidence was immaterial, irrelevant and prejudicial. Zurich contends that the fact the food was received by the food bank and the fact that some of it was eventually consumed was relevant to the factual issue whether the ravioli was in fact contaminated.

This evidence was relevant to the issue of damages, if at all. In light of the

jury's finding of no coverage, we hold that error, if any, in the admission of this evidence was harmless. Accordingly, we overrule Food Source's final four points of error.

We affirm the judgment of the trial court as entered.