GREAT GLOBAL ASSURANCE COMPA-
NY, An Arizona Corp., by Susan A. Gal-
linger, Director of Insurance and Re-
ceiver of the Great Global Assurance
Company, Appellant,

v.

KELTEX PROPERTIES, INC.,
et al., Appellees.

GREAT GLOBAL ASSURANCE COMPA-
NY, An Arizona Corp., by Susan A. Gal-
linger, Director of Insurance and Re-
ceiver of the Great Global Assurance
Company, Appellant,

v.

TEXERGY CORPORATION,
et al., Appellees.

Nos. 13–93–156–CV, 13–93–157–CV.

Court of Appeals of Texas,
Corpus Christi.

June 29, 1995.

Timothy P. Dowling, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellant.

John M. McKellip, William R. Skolnick, LuAnn M. Petricka, Minneapolis, for appellees.

Before SEERDEN, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

This is an appeal from two orders denying applications for attorneys' fees and costs under the Texas Turnover Statute. Great Global Assurance Company[1] obtained a judgment against Keltex Properties, Inc. and others (the Keltex Appellees) in Arizona (the Arizona Judgment). The judgment awarded in part $315,835.91 for attorneys' fees and costs. A Corpus Christi law firm was employed to collect the judgment, and it obtained $141,000 in turnover relief. The law firm filed two applications under the turnover statute to recover its attorneys' fees and costs. After hearing evidence, the trial court denied both applications. Great Global appeals by eight points of error. We reverse and remand.

On April 24, 1991, the Arizona Judgment, including a supplemental judgment, was filed with the 105th District Court of Nueces County pursuant to the Uniform Enforcement of Foreign Judgments Act[2] (the Domestication Suit).[3] In order to satisfy the $315,835.91 portion of the judgment, the Corpus Christi law firm of Gary, Thomasson, Hall, & Marks filed an application for writs of garnishment and turnover orders (the Turnover Suit)[4] against Texergy Corporation, John W. McKellip, and others (the McKellip Appellees). On October 21, 1991, the trial court signed an order authorizing writs of garnishment and turnover orders,

---

1. Great Global Assurance Company is in receivership. Susan A. Gallinger, Director of Insurance for the State of Arizona, was appointed receiver of the company.

2. *See* Tex.Civ.Prac. & Rem.Code Ann. § 35.001–008 (Vernon 1986).

3. The Domestication Suit was assigned cause number 91–2381–D. On appeal, we assigned cause number 13–93–156–CV to the case.

4. The Turnover Suit was assigned cause number 91–5869–D. On appeal, we assigned cause number 13–93–157–CV to the case.

and on January 30, 1992, it signed an amended turnover order. Gary, Thomasson's efforts resulted in a recovery of $141,000 on the Arizona Judgment. The law firm filed two applications for recovery of its attorneys' fees and costs; one in the Domestication Suit and the other in the Turnover Suit. Great Global sought to hold the Keltex Appellees liable under the turnover statute for $97,-811.90 in attorneys' fees and $18,286.47 in costs that it incurred in attempting to collect the Arizona Judgment and enforce and obtain the turnover orders. After hearing evidence on these two applications, the trial court denied the applications on December 2, 1992.

On January 19, 1993, the trial court signed separate findings of fact and conclusions of law in the Domestication Suit and the Turnover Suit. The contents of the findings of fact and conclusions of law were identical in both suits.

### Findings & Conclusions

1. The attorney's fees and expenses sought by the Plaintiff were not reasonable under the circumstances.

2. The Plaintiff failed to meet its burden of proof to show that the requested attorney's fees and expenses were reasonable.

3. The Plaintiff has not made sufficient attempts to collect its judgment through ordinary legal process.

4. The testimony and evidence before the Court indicates that the Plaintiff is not entitled to recover any of its requested attorney's fees or expenses.

### McKellip's Motion to Dismiss

■ Before confronting the merits of this case, we address John W. McKellip's *pro se* motion to dismiss these appeals. The motion to dismiss includes McKellip's affidavit. Great Global objects to the affidavit. It attacks the credibility of the affidavit on the grounds that an Arizona court found McKellip in civil contempt for failure to pay sanctions and issued a civil warrant for his arrest. Great Global argues that, due to the contempt and warrant, we should not consider McKellip's affidavit, or, if we consider it, we

should give the affidavit "minimal weight." We disagree.

Rule 601(a) of the Texas Rules of Civil Evidence provides that "[e]very person is competent to be a witness except as otherwise provided in these rules." TEX.R.CIV. EVID. 601(a). The Rules of Civil Evidence do not say that a person is incompetent to testify as a witness because a court has held that person in civil contempt and has issued a civil arrest warrant for that person. TEX.R.CIV. EVID. 601; *see also Parrish v. Brooks*, 856 S.W.2d 522, 528 (Tex.App.—Texarkana 1993, writ denied) (convicted felon may be competent witness). We overrule Great Global's objection to the affidavit.

■ We now turn to the merits of McKellip's motion. McKellip's first argument is that Great Global improperly served its appellate brief on Mamm Peak Associates, one of the Keltex Appellees. He points out that the certificate of service attached to Great Global's appellate brief shows that Great Global obtained service on Mamm Peak by serving Mamm Peak Associates, c/o J.W. McKellip, P.O. Box 35326, Minneapolis, MN 55485. McKellip's affidavit states, "I am not a General Partner in the Colorado general partnership known as Mamm Peak Associates nor do I have any personal investment in said partnership."

Texas Rule of Appellate Procedure 4(e) provides:

> Copies of all papers *filed by any party* and not required by these rules to be served by the clerk shall, at or before the time of filing, be served by a party or person acting for him *on all other parties to the appeal* or review. Service on a party represented by counsel shall be made on counsel. (Emphasis added).

In a letter dated April 20, 1993, LuAnn Petricka of William R. Skolnick, P.A., attorneys at law, advised this court "please forward any and all future filings directly to Mr. John W. McKellip, P.O. Box 39326, Minneapolis, MN 55437. It is no longer necessary to send reproductions of various court filings to our

office since we no longer represent the various named Defendants." [5]

Once Mamm Peak's counsel ended representation, Rule 4(e) required Great Global to serve Mamm Peak. According to Petricka's letter, Great Global had to serve it by serving John W. McKellip. The certificate of service showed that on May 24, 1993, Great Global's counsel served a copy of the appellate brief on Mamm Peak by serving J.W. McKellip. We hold that Great Global properly served its appellate brief on Mamm Peak. TEX.R.APP.P. 4(e).

■ McKellip's remaining ground is that Great Global did not name Benjamin Sley as a party in its appellate brief. On April 14, 1992, Great Global filed a motion for sanctions in the Domestication Suit against several of the Keltex Appellees and Benjamin Sley, their former attorney. On December 2, 1992, the trial court signed an order denying the motion for sanctions. On February 16, 1993, Great Global filed separate notices of appeal in the Domestication Suit and Turnover Suit. Great Global stated in both notices that it intended to appeal *only* the trial court's orders that overruled its applications for attorneys' fees and costs. Great Global stated that it did not wish to appeal any other rulings by the trial court.

McKellip argues that since Sley was subject to the court's final order, Great Global should have named him in its appellate brief according to Rule 74(a) of the Texas Rules of Appellate Procedure. Rule 74(a) provides, in relevant part, that the appellant's brief include a "complete list of the names and addresses of all parties to the trial court's final judgment...." TEX.R.APP.P. 74(a).

Benjamin Sley was not a party to the orders from which Great Global brings these appeals. Thus, Rule 74(a) did not require Great Global to name Sley in its appellate brief as a party to the trial court's final judgment. TEX.R.APP.P. 74(a). We deny McKellip's motion to dismiss these appeals.

5. A copy of this letter was forwarded to Timothy Dowling, Great Global's appellate counsel. A copy of the letter is attached as Exhibit D to

*Great Global's Appeals*

■ By its first and third points of error, Great Global contends that the trial court erred when it concluded that the Texas Turnover Statute did not require an award of attorneys' fees and costs to a party who had successfully obtained turnover relief. The turnover statute provides, in relevant part, as follows:

> (a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:
>
> (1) cannot readily be attached or levied on by ordinary legal process; and
>
> (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.
>
> (b) The court may:
>
> (1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;
>
> \* \* \* \* \* \*
>
> (e) The judgment creditor is entitled to recover reasonable costs, including attorney's fees.

TEX.CIV.PRAC. & REM.CODE ANN. § 31.002 (Vernon 1986).

■ TEX.CIV.PRAC. & REM.CODE ANN. §§ 38.001–.006 govern the recovery of attorneys' fees under section 31.002(e). *Ross v. 3D Tower Ltd,* 824 S.W.2d 270, 273 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *see Carlyle Real Estate Ltd. Partnership–X v. Leibman,* 782 S.W.2d 230, 233 (Tex.App.—Houston [1st Dist.] 1989, no writ) (court concluded § 38.001 governed claim for attorneys' fees under turnover statute). In *Cortland Line Co. v. Israel,* the Fourteenth Court of Appeals stated:

Great Global's response to McKellip's motion to dismiss.

The award of reasonable attorney's fees is mandatory under § 38.001 if there is proof of the reasonableness of the fees. [Citation omitted]. A court has the discretion to fix the amount of attorney's fees, but it does not have the discretion in denying them if they are proper under § 38.001. [Citation omitted]. *Cortland Line Co. v. Israel,* 874 S.W.2d 178, 184 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *see also Budd v. Gay,* 846 S.W.2d 521, 524 (Tex.App.—Houston [14th Dist.] 1993, no writ) (same pronouncement). In addition, an award of attorneys' fees under section 31.002(e) is proper only if a judgment creditor is successful in obtaining turnover relief. *Boudreaux Civic Ass'n v. Cox,* 882 S.W.2d 543, 550 (Tex.App.—Houston [1st Dist.] 1994, no writ); *Daniels v. Pecan Valley Ranch, Inc.,* 831 S.W.2d 372, 386 (Tex. App.—San Antonio 1992, writ denied), *cert. denied,* —— U.S. ——, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993) (judgment creditor who obtains turnover relief entitled to reasonable costs, including attorneys' fees).

■ Section 38.001 provides that a person may recover reasonable attorneys' fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for rendered services or performed labor. TEX.CIV.PRAC. & REM.CODE ANN. § 38.001(1) & (2) (Vernon 1986). In the instant case, Great Global, through the efforts of Gary, Thomasson, obtained turnover relief in the amount of $141,000. It sought attorneys' fees and costs for collecting that part of the Arizona Judgment. We hold that an award of attorneys' fees and costs is mandatory under TEX.CIV.PRAC. & REM.CODE ANN. § 31.002 if the evidence shows 1) that the judgment creditor was successful in obtaining turnover relief and 2) that the attorney's fees and costs are reasonable. *See Israel,* 874 S.W.2d at 184; *Budd,* 846 S.W.2d at 524. We sustain appellant's first and third points of error.

■ By its second point of error, Great Global contends that the trial court erred in finding that Great Global's alleged failure to make sufficient attempts to collect the judgment through other legal process was a basis to deny all attorneys' fees and costs.

Section 31.002(a) provides that a judgment creditor is entitled to turnover relief if the judgment debtor owns property that 1) cannot readily be attached or levied on by ordinary legal process, and 2) is not exempt from attachment, execution, or seizure for the satisfaction of liability. TEX.CIV.PRAC. & REM. CODE ANN. § 31.002(a). The Turnover Statute does not state that a party must meet these requirements in order to obtain attorneys' fees and costs under section 31.002(e). In the instant case, the trial court granted turnover relief, and Great Global obtained $141,000 in partial satisfaction of the Arizona Judgment. We have held that once a judgment creditor obtains turnover relief, it may obtain reasonable attorneys' fees and costs pursuant to section 31.002(e).

We hold that a judgment creditor's failure to make sufficient attempts to collect the judgment through other legal process, though it may be a consideration in determining the reasonableness of the amount of attorneys' fees and costs, is not a basis to deny a request for attorneys' fees and costs under § 31.002(e). TEX.CIV.PRAC. & REM. CODE ANN. § 31.002 (Vernon 1986). We sustain appellant's second point of error.

■ By its seventh point of error, Great Global contends that the trial court committed reversible error when it allowed attorney David Bright to testify in a narrative form.

At the hearing on Great Global's application to recover attorneys' fees and costs, David Bright, an attorney representing the McKellip Appellees, called himself as a witness and began to testify in a narrative format, rather than a question-answer format. Great Global's counsel objected as follows:

I would like to lodge an objection to the form of the question in this format by Mr. Bright. We agreed to Mr. Sley because of the unusual circumstances involved with him. I'm not—I don't think it's clear that he could do this.

The trial court overruled the objection, and Bright resumed his narrative testimony. Bright testified that Great Global's fees were not reasonable and not necessary.

Great Global contends that Bright's testimony was "highly prejudicial." Great Global argues that if the trial court had excluded Bright's testimony, there would be no evidence that Great Global's attorneys' fees were not reasonable and not necessary. Thus, the trial court committed reversible error by allowing him to testify in a narrative fashion.

As authority, Great Global cites *Abramson v. Davenport*, 269 S.W.2d 833 (Tex.Civ. App.—Austin 1954, writ ref'd n.r.e.). In that case, Davenport, an attorney, sued Abramson for attorney's fees. The parties tried the case before a jury. During trial, Davenport took the stand and testified over objection in a narrative form. However, no further objections were made, "either as to the narrative form or as to the admissibility or materiality of such testimony...." The *Abramson* Court stated:

> We believe that, as a rule, testimony should be elicited by question and answer form from all witnesses, and the fact that an attorney is testifying in his own behalf is not an exception, but since in this case the attorney, as plaintiff and as a witness, after having called the defendant as a witness and such defendant as a witness testified as to the oral agreements, a portion of which we have herein summarized, and the testimony of the attorney as a witness went no further than to testify as to the oral agreements and as to certain record showings, all of which were within the knowledge of or available to the defendant, we do not believe that the defendant was prejudiced by such narrative testimony and particularly since no objections were made as we have herein set out.

*Abramson*, 269 S.W.2d at 834.

 A judge's responsibility includes the general conduct of trial, and he may properly intervene to promote its expedition and prevent unnecessary waste of time. *Food Source, Inc. v. Zurich Ins. Co.*, 751 S.W.2d 596, 600 (Tex.App.—Dallas 1988, writ denied); *French v. Brodsky*, 521 S.W.2d 670, 679 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). Rule 611(a) of the Texas Rules of Civil Evidence provides that "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to 1) make the interrogation and presentation effective for the ascertainment of the truth, 2) avoid needless consumption of time, and 3) protect witnesses from harassment or undue embarrassment." Tex.R.Civ.Evid. 611(a). Under Fed.R.Evid. 611(a) (which is identical to the Texas rule), a trial court generally has broad discretion in deciding whether to allow narrative testimony. *United States v. Young*, 745 F.2d 733, 765 (2d Cir.1984); *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *Hutter N. Trust v. Door County Chamber of Commerce*, 467 F.2d 1075, 1078 (7th Cir.1972) (trial court has discretion to deny witness's request to testify in narrative form).

 An appellate court may reverse a trial court for abuse of discretion only if, after searching the record, it clearly shows that the court's decision was arbitrary and unreasonable. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex.1987); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The appellate court is required to view the evidence in the light most favorable to the trial court's action and indulge in every presumption which would favor the trial court's action. *Ocean Transp., Inc. v. Greycas, Inc.*, 878 S.W.2d 256, 269 (Tex. App.—Corpus Christi 1994, writ denied).

Great Global's argument that Bright's testimony was highly prejudicial does not comport with the objection it made at the hearing. Great Global only objected to the narrative form of the testimony; it did not object to the admissibility or materiality of the testimony. *See Abramson*, 269 S.W.2d at 834. The trial court could have allowed the narrative in order to promote expedition of the hearing and needless waste of time. Tex. R.Civ.Evid. 611(a); *Food Source*, 751 S.W.2d at 600; *French*, 521 S.W.2d at 679. We note that Great Global was allowed to cross-examine Bright.

 Additionally, in a non-jury case, an appellate court presumes that the trial judge, sitting as fact finder, disregarded any im-

properly admitted evidence. *Southwestern Bell Media, Inc. v. Lyles,* 825 S.W.2d 488, 498 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *Blanco v. Gracia,* 767 S.W.2d 896, 898 (Tex.App.—Corpus Christi 1989, no writ). Though we do not condone narrative testimony and do not encourage its future use, we hold that under these circumstances, the trial court's decision to allow the narrative testimony was not so arbitrary and unreasonable that it amounted to an abuse of discretion. TEX.R.CIV.EVID. 611(a). We overrule appellant's seventh point of error.

■ By its fourth and sixth points of error, Great Global contends that it proved its attorneys' fees and costs as a matter of law. By its fifth and eighth points of error, Great Global contends that it proved by the great weight and preponderance of the evidence that its attorneys' fees and costs were reasonable.

■ A trial judge's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's answer. *Zieben v. Platt,* 786 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1990, no writ) (citing *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.)). We review the legal conclusions drawn from the facts found by the trial court to determine their correctness. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

■ When a party with the burden of proof complains on appeal from an adverse finding, the appropriate points of error are "that the matter was established as a matter of law" or "that the jury's finding was against the great weight and preponderance of the evidence." *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983).

■ When we review a legal sufficiency or "that the matter was established as a matter of law" point, we examine the record for evidence supporting the finding of fact and ignore all evidence to the contrary. *Sterner v. Marathon,* 767 S.W.2d 686, 690 (Tex.1989); *Hickey v. Couchman,* 797 S.W.2d 103, 109 (Tex.App.—Corpus Christi 1990,

writ denied). If we find that no evidence supports the finding, we must determine from the record whether the contrary proposition is established as a matter of law. *Sterner,* 767 S.W.2d at 690; *Hickey,* 797 S.W.2d at 109.

■ When we review a factual sufficiency or "that the jury's finding was against the great weight and preponderance of the evidence" point, we examine the entire record. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Hickey,* 797 S.W.2d at 110. We set aside the verdict only if it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain,* 709 S.W.2d at 176; *Hickey,* 797 S.W.2d at 110.

The evidence showed that Timothy Dowling, an attorney employed with Gary, Thomasson, served as Great Global's lead counsel. He became an attorney in 1980 and, two years later, started representing creditors in bankruptcy cases. In 1984, he began working in litigation outside the bankruptcy area. He had billed litigation files for at least six and one-half years. He received board certification in business bankruptcy in 1991. Dowling testified that Gary, Thomasson had collected $141,000 on the Arizona Judgment. The law firm charged Great Global $97,811.90 in attorneys' fees and $18,286.47 in costs. The attorneys' fees were based on 935.3 hours of work at an average rate of $104.58 per hour. Dowling described the Turnover Suit as a document-intensive case that involved very difficult, time-consuming litigation. The law firm conducted lengthy depositions in order to learn what assets existed to satisfy the Arizona Judgment. Dowling had to obtain documents through discovery and then had to organize them and determine what they meant.

On October 21, 1991, Dowling obtained a turnover order designed to seize assets to satisfy the Arizona Judgment. However, due to a compliance problem with the order, he had to get an amended turnover order. He had to obtain a third turnover order on property known as the Henderson property. The Turnover Suit required Dowling to file pleadings to remove an existing operator and

appoint a new operator on the most productive mineral properties that the turnover orders covered. He had to perform work in response to at least five violations of the trial court's orders. His pleading index contained 143 documents.

Dowling spent the most time on the case, but other lawyers in the firm worked on it as well. Bill Granberry, an oil-and-gas attorney, assisted Dowling because the turnover orders involved mineral properties and production buyers. Tim Perrin helped prepare the turnover orders and accompanying documents. Steve Hilmey and Lou Anne Huval did most of the research work. Kevin Maraist assisted on the case in the same way that Granberry did. Cindy Hill worked on obtaining a deed from J.W. McKellip. Seven legal assistants and one legal investigator worked on the case with Dowling or with one of the other attorneys.

Dowling's testimony showed that the attorneys' fees and costs were reasonable and necessary for the work related to the turnover orders. The hourly rates charged were normal for this type of work. He did not charge a higher rate because of the unusually difficult demands that this case placed on him. Dowling testified that in his experience, the fees in a document-intensive case "get quite a bit more expensive" than in a non-document intensive case.

Benjamin Sley, the attorney representing the Keltex Appellees, testified that "any expense that is involved have [sic] been merely due to the nature of the case."

David Bright, the attorney representing the McKellip Appellees, is employed with the law firm of Sorrell, Anderson, Lehrman, Wanner, & Thomas. Bright practiced law in Nueces County for approximately six years and confined his practice almost exclusively to civil-litigation matters. Bright testified that the attorneys' fees were not reasonable and not necessary. The case was document intensive because Dowling obtained turnover orders. Gary, Thomasson should have filed abstracts of judgment and sought writs of execution. According to Bright, the fees in a number of instances were caused by Great Global's or Gary, Thomasson's own mistakes or acts. Bright testified that Gary, Thomasson had drafted orders that were unintelligible and required additional hearings for clarification. The case was over litigated, and the discovery was overbroad, overburdensome, and frivolous. Bright received voluminous, unnecessary correspondence. Bright informed the court that the only way to conclude this case was to overrule Dowling's application for attorneys' fees.

The Texas Supreme Court, in *Ragsdale v. Progressive Voters League,* 801 S.W.2d 880 (Tex.1990) (per curiam), discussed the requirements that a court must follow when awarding attorneys' fees as a matter of law. In that case, Paul Ragsdale sued the Progressive Voters League for violations of the Election Code. His attorneys testified about the time involved, the nature of the services rendered, and the reasonableness of the fees charged. This evidence was uncontroverted. The trial court awarded Ragsdale $150 attorneys' fees. On appeal, the supreme court stated:

> In order for the court to award an amount of attorneys' fees as a matter of law, the evidence from an interested witness must not be contradicted by any other witness or attendant circumstances and the same must be clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to case [sic] suspicion thereon. The court, as a trier of fact, may award attorneys' fees as a matter of law in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so....

*Ragsdale,* 801 S.W.2d at 882. The supreme court found that the trial court had abused its discretion by awarding $150 attorneys' fees because the evidence was clear, direct and positive, not contradicted by any other witness or attendant circumstances, and nothing existed to show otherwise. The supreme court rendered judgment favorable to Ragsdale for $22,500 in attorney's fees.

In the instant case, Bright testified that the attorneys' fees and costs requested by Great Global were not reasonable and not necessary. This evidence contradicted Dowling's testimony about the reasonableness and

necessity of the attorneys' fees and costs. We hold that Great Global did not prove its right to recover attorneys' fees and costs as a matter of law. *See Ragsdale*, 801 S.W.2d at 882. We overrule appellant's fourth and sixth points of error.

The evidence showed that Gary, Thomasson performed 935.3 hours of work on the Turnover Suit that produced $141,000 in turnover relief. Dowling testified that the attorneys' fees and costs were reasonable and necessary. Bright testified that the fees and costs were not reasonable and not necessary. The trial court had to weigh the evidence and arrive at a reasonable figure. After weighing and considering all the evidence, we hold that the trial court's failure to award attorneys' fees and costs is against the great weight and preponderance of the evidence and is manifestly unjust. We sustain appellant's fifth and eighth points of error.

We reverse the trial court's judgment and remand this case to the trial court for a determination of reasonable attorneys' fees and costs.