# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-09-00224-CV
---

**David Carl Goad, Appellant**

**v.**

**State of Texas for the Protection of Lisa A. Dunlap, Appellee**

---
**FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT
NO. C2008-1461C, HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING**
---

## M E M O R A N D U M   O P I N I O N

Appellant David Carl Goad, acting pro se, challenges a family-violence protective order entered against him pursuant to Title IV of the Texas Family Code. *See* Tex. Fam. Code Ann. §§ 71.001-87.004 (West 2008). He argues that the trial court erred in exhibiting bias against him, failing to admit certain documents into evidence, and failing to adopt his proposed findings of fact and conclusions of law. He further argues that the evidence supporting the order is insufficient and that Title IV of the family code is unconstitutional. We will affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

In December 2008, the Comal County Criminal District Attorney's Office filed an application for a protective order on behalf of Goad's ex-wife, Lisa A. Dunlap, and their minor children, K.G. and N.G. Affidavits from both Dunlap and N.G. were attached to the application, describing an incident on December 9, 2008, when Goad hit N.G. several times in the face, and

alleging that Goad had a history of domestic violence. Finding that there was a clear and present danger of family violence, the district court entered a temporary ex parte order directing Goad to refrain from committing acts of family violence or going within 200 yards of Dunlap, K.G., or N.G. *See* Tex. Fam. Code Ann. § 83.001(a). The following week, Goad filed a motion to vacate the temporary order. *See id.* § 83.004.

The trial court held a hearing on the State's application for a protective order and Goad's motion to vacate. *See id.* § 84.002(a). At the hearing, the State called Goad to testify; several times during his questioning, he objected and refused to answer, purporting to "take the Fifth."[1] The court overruled his objections and ordered him to answer. When asked about the December 9 incident giving rise to the present application for the protective order, Goad responded that he was attempting to discipline N.G. for screaming and swearing at him. He testified that he slapped N.G. on the side of the head, but explained that he had actually intended to slap her in the mouth "because of what was coming out of her mouth." State's exhibit 2, a color photograph of the side of N.G.'s head showing a small scratch or cut near her ear, was admitted into evidence without objection.

Goad further stated that "[he] did not deny" ever striking his other daughter, K.G., and acknowledged that he had been subject to a prior protective order when the parties were living in California that restricted his access to K.G. Goad testified that Dunlap had sought protective

---

[1] Goad "ask[ed] for the Fifth" in response to questions about whether he had been held in contempt of court in May 2001 during child-custody proceedings in California after he and Dunlap divorced and whether the State of California had ever ordered him to keep away from his daughter, K.G., for a period of three years.

orders against him numerous times in the past, in each case alleging acts of domestic violence, but stated that he could not recall how many protective orders she had actually obtained and that he believed he had only been charged one time for violating a protective order.

Stephanie Fillmore, the Child Protective Services investigator in charge of N.G.'s case, also testified. She stated that although the investigation was ongoing, her preliminary finding regarding whether N.G. had been abused was "unable to determine" because she had not found evidence to support either N.G.'s claim that her father had physically abused her or Goad's claim that he had not. She further testified that Goad had been the subject of a CPS investigation the year before arising out of allegations that he had abused both K.G. and N.G.

During his cross-examination of Fillmore, Goad attempted to play before the court an audio tape that, according to Goad, contained a recorded conversation of Fillmore's initial interview of him in connection with the current CPS investigation. The State objected to the tape's admission, arguing that the proper foundation for it had not been laid because Fillmore testified that she had never heard the tape, could not authenticate it, and had not known that she was being recorded when the tape was purportedly made. Later on, however, the court ordered a recess, during which time it allowed Goad to play the tape recording for Fillmore to refresh her recollection of earlier statements she had made to Goad during the interview. When cross-examination resumed, Fillmore testified that she had earlier told Goad that she would not consider "a slap" to be physical

abuse, that she would not characterize the incident as Goad described it to be physical abuse, and that

N.G. had said that she experienced no pain or bruising after the incident in question.[2]

On redirect, Fillmore was asked to clarify her testimony about her earlier statements

to Goad. She testified as follows:

> The State: Ms. Fillmore, we've listened to the tape. We've listened to your testimony earlier and we've listened to the follow-up questions that Mr. Goad had regarding the visit to his home and everything.
>
> Do you feel that some of the questions he asked you were asked without the full situation being described to you?
>
> A. Yes.
>
> Q. When he was forcing you to use yes or no answers?
>
> A. Yes.
>
> Q. . . . What is Child Protective Service's policies [sic] on any kind of a physical discipline?
>
> A. Our policy is we do not condone physical discipline, however, we cannot tell a parent they cannot physically discipline their child. We can only recommend that they not do so.
>
> . . . .
>
> Q. Do you consider slapping a child on the face to be physical discipline that would be appropriate?
>
> A. It would depend on the age of the child and the circumstances.

---

[2] The tape was eventually admitted into evidence as Respondent's exhibit 2 after Goad took the stand and authenticated it.

Q. Under these circumstances, would the physical slapping of this young lady, three or four times, four or five, however many she told you, and you remember that—

A. Uh-huh.

Q. —what she described to you, did that appear appropriate?

A. No, it did not.

Q. And is that why you came to the conclusion that this was unable to determine?

A. Yes, it is.

The State also called Dustin Sweet, one of the New Braunfels police officers who was called to Goad's house on December 9 to investigate a report of domestic violence. Sweet testified that Goad had acted aggressively and became agitated when Dunlap arrived to pick up N.G. on Sweet's recommendation that, in order to prevent further family violence, N.G. should not stay at Goad's house. During Sweet's cross-examination, Goad attempted to question him about a photograph of N.G. allegedly taken after the December 9 incident. Sweet noted that, in contrast to State's exhibit 2, this photograph did not appear to show a cut or scratch on N.G.'s face. This photograph was not admitted into evidence, however.

N.G. also testified. She stated that on the evening of December 9, Goad hit her four or five times with his left hand, which caused redness and a small cut on the right side of her face. She further stated that, at the time, she had been grounded for lying to Goad about whether she was still seeing her boyfriend against Goad's wishes. At several points during Goad's examination of N.G., the State objected that he was testifying rather than asking her questions and was attempting

5

to discuss topics not relevant to the protective order. During one of these episodes, the trial court interjected and informed Goad that if he continued to make such comments, then he would be spending the night in jail. When Goad accused the court of getting angry with him and threatened to "call it quits," the trial court stated:

> I will tell you, Mr. Goad, I'm using every bit of restraint that I have to make sure that you get a fair hearing. If you don't understand that then I can't help you there.
>
> But you need to understand that you are not permitted, nor are lawyers permitted, to make snide comments, to make comments derogatory to this proceeding during the course of the proceeding and, if you continue to do so, I will find you in Contempt of Court and I will place you in jail.

Goad also called Dunlap to testify. She stated that, during their marriage, Goad struck her four or five times, and since the marriage ended, Goad had harangued, harassed, and threatened her and their children. Goad sought to elicit testimony and introduce evidence relating to Dunlap's alleged suicide attempt in 2004, but the State's objections on relevancy grounds were sustained. On cross-examination, Dunlap testified that she knew Goad had been violent toward their children, that she would be concerned for their safety if they were to have unsupervised contact with him, and that she was still afraid of him to this day. She also testified that she had obtained two previous protective orders against Goad; the last one was entered in 2001 and was in place for a period of three years.

At the conclusion of the hearing, the trial court found that family violence had occurred and would likely occur in the future; the court granted the application for a protective order for two years. The court also ordered Goad to complete a battery-intervention program and pay the

State's attorney's fees in the amount of $500. Following the hearing, Goad requested that the trial court issue findings of fact and conclusions of law. He amended his request several days later, asking that the trial court "rule upon" a number of specific issues relating to alleged deficiencies in the State's application for a protective order, the supporting affidavits, subpoenas for testifying witnesses, and the evidence supporting the protective order.

Thereafter, the trial court filed the following findings and conclusions:

> *Findings of Fact* - Family violence has occurred; Family violence is likely to occur in the future; DAVID CARL GOAD has committed family violence.

> *Conclusions of Law*
> A protective order is necessary for the safety, welfare, and protection of LISA A. DUNLAP, and other members of the families or household who are affected by this suit.

After the trial court issued its findings of fact and conclusions of law, Goad filed a request for amended findings and conclusions, asserting that the court's original findings were ambiguous and failed to specify the alleged violence that occurred against Dunlap, K.G., and N.G.; when the alleged violence occurred; what safety and welfare issues exist; whether certain testimony was offered and statements were made by the State's attorney during the hearing; and whether Goad was denied his Fifth Amendment rights. The record contains no order addressing Goad's request. Goad now appeals.

**DISCUSSION**

In his appellate brief, Goad brings a number of challenges to the protective order and trial court proceedings that he does not characterize as separate issues. We will attempt to address each complaint that he raises.

### *Impartiality of Trial Court Judge*

Goad argues that the trial court should have recused himself pursuant to Texas Rule of Civil Procedure 18b(2)(a) and (b) because his statements "threatening Goad with imprisonment and monetary sanction" were evidence of the court's partiality, personal bias, and prejudice.[3]

"Courts enjoy a 'presumption of judicial impartiality.'" *Ex parte Ellis*, 275 S.W.3d 109, 117 (Tex. App.—Austin 2008, no pet.) (quoting *Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd)). "Accordingly, the need for recusal is triggered only when a judge displays an 'attitude or state of mind so resistant to fair and dispassionate inquiry' as to cause a reasonable member of the public to question the objective nature of the judge's rulings." *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 557-58 (1994) (Kennedy, J., concurring)). The movant bears the high burden of proving that recusal is warranted and satisfies his burden only by providing facts demonstrating the presence of bias or partiality "of such a nature and extent as to deny the movant due process of law." *Id.* (quoting *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 185 S.W.3d 555, 574 (Tex. App.—Austin 2006, pet denied)).

---

[3] Goad also asserts that the trial court should have recused himself pursuant to 28 U.S.C. § 455 (West 2006). This statute applies to recusal under federal law, however, and is therefore inapplicable to the proceedings at issue in the present appeal.

Goad has not met that burden here. The cited comments by the trial court, rather than establishing bias or prejudice against him, indicate that the trial court was simply trying to facilitate proceedings that frequently deviated from issues relevant to the protective order. When reviewing allegations of bias, we must bear in mind that trial courts are given broad discretion to express themselves and their opinions, including opinions that may be "critical, disapproving, and even hostile toward" a party. *See Abdygapparova*, 243 S.W.3d at 199. "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" do not establish bias on behalf of a trial court. *Liteky*, 510 U.S. at 555-56. A judge's comments regarding courtroom administration, even if the comments are stern, "remain immune." *Id.* at 556. Having reviewed the entire record, we conclude that the trial court's comments were well within the realm of impartiality. We overrule Goad's issues related to the trial court's alleged bias.

### Evidentiary Issues

Goad next contends that the trial court abused its discretion in denying him "any opportunity to present evidence despite the fact that he was willing and able to do so." In particular, he complains that several documents are not in the record and asks this Court to "accept and consider" these items, which he attached to his brief. Documents not admitted into evidence are not part of the appellate record, however, and may not be considered on appeal. *See Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) (appellate courts may not consider matters outside of appellate record); *Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 501

9

(Tex. App.—Austin 1991, writ denied) (materials outside record that are improperly attached to party's brief may not be considered on appeal).

With respect to Goad's general complaint that the trial court denied him the opportunity to present evidence and effectively cross-examine the witnesses, we find his arguments unavailing. A trial judge's responsibilities include the general conduct of a trial or hearing, and the court may intervene to promote expediency and prevent waste of time. *Great Global Assurance Co. v. Keltex Props., Inc.*, 904 S.W.2d 771, 777 (Tex. App.—Corpus Christi 1995, no writ). Further, in order to generate effective interrogation of witnesses and presentation of evidence, avoid unnecessary use of time, and protect witnesses from harassment, the trial court must exercise reasonable control over the mode and order of the witnesses and evidence. Tex. R. Evid. 611(a). A trial judge has wide discretion to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness's safety, or repetitive or marginally relevant interrogation. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Delamora v. State*, 128 S.W.3d 344, 364 (Tex. App.—Austin 2004, pet. ref'd). Goad has not argued, nor does the record demonstrate, that the trial court abused its discretion in exercising this function.

To the extent Goad is arguing that the trial court should have admitted certain documents into evidence, we review the trial court's decision for abuse of discretion. *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001). A trial court abuses its discretion in admitting or excluding evidence if it acts without reference to any guiding rules and principles or if the act complained of is arbitrary and unreasonable. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). We must uphold a trial court's evidentiary ruling if there

10

is any legitimate basis in the record to support it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

Here, the record demonstrates that Goad offered a photograph, which various parties described as "blurry," that Goad asserts was taken by N.G. after the December 9 incident to document the injuries to her face. Goad attempted to offer the photograph into evidence during his cross-examination of Officer Sweet, suggesting in his argument to the trial court that, contrary to the State's photographic exhibits, which clearly showed a scratch or cut on the side of N.G.'s face, there was no such mark on N.G. The State objected, arguing that the proper foundation had not been laid; the trial court sustained the objection and excluded the photograph. We hold that the trial court did not abuse its discretion in excluding this evidence because it was not supported by the testimony of any witness explaining when it was taken, who took it, and what the subject of the photograph was. *See* Tex. R. Evid. 901.

Goad also offered letters written by Dunlap dating from 2004 and 2005, respectively, that he believed were evidence of Dunlap's mental instability and therefore showed that "Dunlap gave up her right as a parent." We hold that the trial court did not abuse its discretion in excluding these documents on the basis of the State's objection that they were irrelevant to the issue of whether family violence had been committed.

The remaining evidentiary complaints that Goad raises in his appellate brief pertain to evidence not offered during the hearing. Therefore, we find no error in the exclusion of these materials from the record. We overrule Goad's issues relating to the admission and exclusion of evidence.

11

*Findings of Fact and Conclusions of Law*

Goad argues that the trial court erred by "ignoring" his proposed findings of fact and conclusions of law. As discussed above, when Goad initially requested that the trial court issue findings of fact and conclusions of law, he submitted proposed fact findings on a number of evidentiary and procedural issues related to the hearing. The trial court did not adopt those fact findings, instead issuing only the following: "Family violence has occurred; Family violence is likely to occur in the future; DAVID CARL GOAD has committed family violence."

A trial court is required to make findings only on ultimate, controlling, and material issues. *Phillips v. Parrish*, 814 S.W.2d 501, 506 (Tex. App.—Houston [1st Dist.] 1991, writ denied). It is not error for a trial court to refuse to make findings that, like those proposed by Goad, are merely evidentiary in character. *See Jerry v. Kentucky Cent. Ins. Co.*, 836 S.W.2d 812, 816 (Tex. App.—Houston [1st Dist.] 1992, writ denied). None of the proposed findings about which Goad complains relate to ultimate or controlling issues. And, because the trial court adopted all findings and conclusions that were relevant to the judgment, no additional findings were necessary. We overrule Goad's issues relating to the incompleteness of the trial court's findings of fact and conclusions of law.

*Sufficiency of the Evidence*

In a section of his brief reciting the testimony presented at trial, Goad suggests that there were inconsistencies in N.G.'s statements regarding whether he had "hit" her in the head or "slapped" her and urges that Fillmore's testimony at the hearing was impeached with statements she had made on the audio tape indicating that Goad's conduct did not constitute physical abuse. We

12

will construe this as an argument that the evidence is insufficient to support the trial court's finding that family violence had occurred.

A legal-sufficiency challenge to a family-violence protective order, like any other legal-sufficiency challenge, may be sustained only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In reviewing the legal sufficiency of the evidence, a court must consider the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *Id.* at 822. When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g).

Under both our legal and factual sufficiency standards, the fact-finder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819 (legal sufficiency); *Pool*, 715 S.W.2d at 635 (factual sufficiency). We will not substitute our judgment for that of the trial court merely because we might have reached a different conclusion. *Raymond v. Rahme & Williams Invs.*, 78 S.W.3d 552, 555-56 (Tex. App.—Austin 2002, no pet.).

13

The family code defines "family violence" to include "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself." Tex. Fam. Code Ann. § 71.004(1) (West 2008). The trial court heard testimony, including Goad's own admission, that he slapped N.G. on December 9, as well as evidence that Goad had been violent toward Dunlap, K.G., and N.G. in the past, causing them to fear Goad. Although Goad attempted to cast doubt on the severity of the December 9 incident and question whether either of his daughters were ever reasonably placed in fear of physical harm, it was within the province of the trial court as fact-finder to resolve any inconsistencies in the witnesses' testimony; the court was free to accept or reject the testimony of any witness, in whole or in part. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 698 (Tex. 1986).

In view of the entire record, we conclude that there was more than a scintilla of evidence to support the trial court's finding that family violence had occurred and that the evidence supporting the finding was not so weak or contrary to the overwhelming weight of all the evidence that the finding should be set aside. We therefore hold that the evidence was legally and factually sufficient and overrule Goad's issues challenging the evidentiary sufficiency.

### Constitutionality of Title IV of the Texas Family Code

Goad asserts that Title IV of the Texas Family Code is unconstitutional insofar as it prevented him from engaging in pre-trial discovery, thus denying him due process, the right to be heard, and equal protection under the law. The State responds that Goad's complaint that he was

14

denied discovery was waived when he failed to raise the issue in his Motion to Vacate and announced ready for the hearing. Furthermore, the State argues, "it is the fact [Goad] did not propound discovery that caused his complaint, not the Act itself so there is not a due process argument to make."

We presume that the challenged parts of the Texas Family Code are constitutional. *See Teel v. Shifflett*, 309 S.W.3d 597, 601 (Tex. App.—Houston [14th Dist.] 2010, pet. filed). As the party challenging the constitutionality of a statute as applied, Goad had the burden of proving all facts necessary to show that these statutes are unconstitutional as applied to him. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 725 (Tex. 1995); *In re S.C.*, 790 S.W.2d 766, 770 (Tex. App.—Austin 1990, no writ). The record in this case does not demonstrate that Goad attempted to serve discovery requests on the State as contemplated by the Texas Rules of Civil Procedure; rather, he apparently attempted to obtain information from the District Attorney's Office using the Freedom of Information Act, *see* 5 U.S.C. § 552, and was displeased with the District Attorney's responses. As such, his various complaints taking aim at the actions of the assistant district attorney are not relevant to the issue of the constitutionality of the Texas Family Code. We conclude that Goad has not met his burden of showing that the statutes at issue are unconstitutional as applied to him. Furthermore, we hold that his related complaints directed at the actions of the opposing party, rather than any actions of the trial court, present nothing for our review. *See* Tex. R. App. P. 38.1; *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.]

2008, no pet.); *Taylor v. First State Bank*, No. 03-98-00474-CV, 1999 WL 644820, at *2 (Tex. App.—Austin Aug. 26, 1999, no pet.) (not designated for publication).  We overrule these issues.[4]

*Miscellaneous Issues*

Throughout his brief, Goad makes reference to the fact that he was forced to testify in violation of his Fifth Amendment privilege against self-incrimination and that the State's application for a temporary ex parte protective order contained various pleading deficiencies. As to his Fifth Amendment complaint, we note that the trial court correctly determined that self-incrimination was not implicated by these proceedings because none of the questions for which he sought to assert the privilege would have subjected him to criminal responsibility in future proceedings.  *See generally Texas Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex. 1995).[5]  As to his complaints about the sufficiency of the State's application for the temporary ex parte protective order and alleged errors in the supporting affidavits, we agree with the State that these issues are moot now that a final protective order has been rendered.  Goad's remaining issues are overruled.

**CONCLUSION**

Having overruled Goad's issues on appeal, we affirm the trial court's order.

---

[4] Our holding also encompasses each of the complaints Goad raises in the section of his brief entitled, "Criminal District Attorney Melissa Hines' Questionable Conduct."

[5] Moreover, Goad's attempt at a blanket assertion of privilege was impermissible.  *See In re Browning*, 113 S.W.3d 851, 862 n.10 (Tex. App.—Austin 2003, pet. denied).

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   August 6, 2010